ELIPHALET F. PACKARD and another

*vs.*

DORCHESTER MUTUAL FIRE INSURANCE COMPANY.

Androscoggin.    Opinion March 5, 1885.

*Insurance.    Agency.*

The plaintiffs made their application through an insurance agent, believing him to be the defendant's agent; he assumed to act as its agent, wrote the application, sent it to the company with his name as agent upon it; the company received and acted upon it, issued the policy in pursuance of it, wrote the name of the assumed agent upon it and sent it to him and received the premium through him; *Held*, that the plaintiffs might well construe these facts as an official recognition on the part of the company, of the assumed agency.

In the absence of any known restriction of such agent's authority, he may bind his principal by waiving written assent to material alterations in the property insured.

ON REPORT.

Assumpsit to recover the sum of three thousand dollars for a total loss by fire, November 22, 1882, of plaintiffs' frame building situated on the corner of Pine and Lisbon streets in Lewiston, Maine, under the defendant's policy of insurance for that sum, written upon such building November 14, 1881, for the term of three years, and delivered to the plaintiffs by D. H. Holman.

The report discloses that after the plaintiffs' evidence was out the presiding justice made the following rulings :

" Court : If Packard & Scruton applied to Mr. Holman as an insurance agent, and supposing that he was an agent for this company made their application through him, and he assumed to act as their agent, and wrote the application, sent it to the company with his name upon it as their agent, they received it, acted upon it and issued a policy in pursuance of that application, and wrote Mr. Holman's name upon the back of it, sent it to him for delivery and received the premium and the premium note through him — I rule that he was their agent.

" Mr. Savage : Those facts are not controverted.

" Defendant offers to prove : That D. H. Holman was not at the time this insurance was applied for, nor has he since been, in fact, the agent of defendant company ; that is to say, that he had no power of attorney, or authorization, in writing or otherwise, to transact business for it, unless the company is estopped to deny the same by reason of the facts in reference to the application and policy ; that though said Holman had requested to be appointed as such, said company had declined so to do.

" That the name of D. H. Holman was placed upon the policy in suit by defendant's clerk simply as a matter of office convenience, that the person whose duty it was to mail the policy might know to whom to send it.

" That the difference in occupancy of the building insured as described in the application and as it existed in fact was such that the latter would have constituted a different class of risk, than the former, and for which a higher rate of premium would have been demanded, and that it materially increased the risk.

"That the difference in situation of building insured as to exposure and contiguity to other buildings as described in the application and as it existed in fact, was such that the latter would have constituted a different class of risk than the former, and that a higher rate of premium would have been demanded.

"That defendant company would not have accepted the risk at all had it known that the building contained a billiard saloon.

"That the change or alteration of the occupancy of the building after the policy issued so as to change one store into a restaurant materially increased the risk, contributed to the loss, constituted the building a different class of risk; and had insurance been sought on the building as altered, a higher rate of premium would have been demanded than was demanded on the building as actually insured.

"That the occupancy of a portion of the building as a billiard saloon contributed to the loss.

"That the fire originated either in the billiard saloon, not described in the application or policy, or in the restaurant; and if in the restaurant, in a place and from causes which would not have originated the fire had the change or alteration not been made.

"Court: If Mr. Holman wrote the application himself, and knew of the misdescriptions which it contained, and if the alterations were made with his knowledge and consent, then I rule this evidence you offer immaterial.

"Admitted that the facts hypothetically assumed in the Judge's rulings are all true.

"Defendant offers to prove that such assent was not in writing, as provided on the policy.

"Court: Notwithstanding by the terms of the policy, any consent to a change by the agent was required to be in writing, I rule that if he knew of it and did consent verbally, it would be obligatory upon the company all the same, under our statute."

Thereupon the defendant, by consent, was defaulted; and it was agreed that the case should be reported to the Law Court.

If the Law Court is of the opinion that the foregoing rulings are correct, judgment is to be rendered for the plaintiff on the default, interest to commence January 22, 1883; otherwise the default is to be taken off and the action stand for trial.

*William P. Frye, John B. Cotton, Wallace H. White, Seth M. Carter,* for the plaintiffs cited: *Insurance Co.* v. *McCain,* 6 Otto, 84; Story on Agency, § 127; *Planters' Ins. Co.* v. *Myers,* 30 Am. R. 521 and note; *Insurance Company* v. *Wilkinson,* 13 Wall. 222; *Ins. Co.* v. *Eddy,* 55 Ill. 213; *Hornthal* v. *West. Ins. Co.* 88 N. C. 71; (Reported in Alb. Law Jour. Sept. 22, 1883, page 240); *Ins. Co.* v. *Mahone,* 21 Wall. 152. See also, *Woodbury, &c., Bank* v. *Charter Oak Ins. Co.* 31 Conn. 517–526; *Peck* v. *N. L. Ins. Co.* 22 Conn. 575; *Rowley* v. *Empire Ins. Co.* 36 N. Y. 550; *Franklin's case,* 42 Mo. 457; *Beal* v. *Park Ins. Co.* 16 Wis. 257; *Ins. Co.* v. *McLanathan,* 11 Kan. 533; *Dryden* v. *G. T. Railway,* 60 Maine, 512; *Ehrman* v. *Teutonia Fire Ins. Co.* 1 McCreary; S. C. 123, (cited in U. S. Digest. vol. XII, N. S. 1881, p. 456;) *St. Louis* v. *Ferry Co.* 11 Wall. 429; R. S. 1871, c. 49, § § 18, 19, and 20; *Thayer* v. *Ins. Co.* 70 Maine, 539; *Waterhouse* v. *Ins. Co.* 69 Maine, 410; *Emery* v. *Ins. Co.* 52 Maine, 322; *Palmer* v. *Ins. Co.* 44 Wis. 201; *Blood* v. *Hardy,* 15 Maine, 61; *Adams* v. *McFarlane,* 65 Maine, 152; *Wiggin* v. *Goodwin,* 63 Maine, 389.

*A. R. Savage and H. W Oakes,* for the defendant.

As to third parties, one person may bind another by his acts as agent:

1st. When he has actual authority, to do such acts.

2d. When, not having such authority, he is allowed by another to act in such a manner that the third party may reasonably suppose him to have authority. This carries the law of implied agency to its fullest extent. Parsons on Contracts, vol. I, page 40; Story, Agency, § 127; 61 Maine, 539.

Holman certainly did not have actual authority to act as agent of the defendant.

The public laws of 1862, c. 115, § 1, incorporated without change in the revisions of 1871 and 1883, provide that "an

agent authorized by an insurance company, whose name shall be borne on the policy, shall be deemed the agent of the company in all matters of insurance," &c.

In this action the name of the broker, D. Horace Holman, appears on the back of the policy — nowhere else — not as a countersign in the body of the policy — with nothing, so far as the evidence shows, to indicate that it was placed there as the name of the agent of the company — indeed the defendant offers to show that it was not there for that purpose, but merely as a matter of office convenience.

Supposing for the purpose of this inquiry, that this is sufficient to bring the endorsement within the meaning of the statute, still the statute refers not to any person "whose name shall be borne on the policy," but to "an agent authorized by an insurance company, whose name," &c.

As we have said, Holman was not an "authorized agent."

Are we then to conclude that the words "authorized by an insurance company" are a part of the definition of the word "agent," intended by the legislators creating the statute, or are we to reject these words entirely, and consider only the words "whose name shall be borne on the policy?" 22 Pick. 571-573.

By this section, the person who may bind a company by his acts was:

1st. An agent authorized by an insurance company "to receive applications for insurance."

2d. One authorized "to receive payments of premiums."

3d. One "whose name shall be borne on the policy."

We claim that all of these conditions must exist in order to establish the extraordinary liability put upon a company by our law. 1 Pick. 45; 4 Mass. 473; 5 Cushing, 461; 59 Maine, 433; 61 Maine, 539; 36 Mich. 131; Story's Agency, § 73; 9 Peters, U. S., 607; 12 Hun. 321; 57 Maine, 138; 80 N. Y. 39; *Walsh* v. *Hartford Fire Ins. Co.* 73 N. Y. 5; 212 L. C. Jurist, 274; 12 Md. Law Rec. 123.

VIRGIN, J. The policy stipulated that it "shall be void if any material fact or circumstance stated in writing has not been

fairly represented by the insured,  .  .  or if without the assent in writing of the company, the situation of circumstances affecting the risk shall, by or with the knowledge, advice, agency, or consent of the insured, be so altered as to cause an increase of such risks. "

The testimony showed that the application contained a misrepresentation as to the contiguity of other buildings; and that an alteration of the building insured was subsequently made, causing a material increase of the risk.

It was not controverted that the plaintiffs made their application through one Holman, an insurance agent, believing him to be the agent of the company; that he assumed to act as its agent, wrote the application, sent it to the company with his name as its agent upon it; that the company received it, acted upon it, issued the policy in pursuance of it, wrote Holman's name upon the back of it, sent it to him for delivery and received the premium through him. Thereupon the presiding justice ruled that Holman was the agent of the company.

It was admitted that Holman knew of the misdescriptions in the application written by him, and that the alterations were made with his knowledge and consent. Whereupon the presiding justice ruled that, notwithstanding the misdescriptions, the company was bound; and that Holman's verbal consent to the alterations were obligatory upon the company, under the statute.

We perceive no error in these rulings. To be sure, the mere fact that Holman signed the application as agent, was not enough to show him to be the company's agent. *Campbell* v. *Man. F. Ins. Co.* 59 Maine, 430. The defendant could not prevent such an act on his part done in its absence. But that fact carried home to the company's knowledge by sending to it the application with his assumed official signature thereon, combined with its subsequent acts, including the indorsing his name on the policy, might well be construed by the plaintiffs as an official recognition of his assumed character at common law, but also to bring his authorization within R. S., c. 49, § 18. *Dunn* v. *G. T. Railway*, 58 Maine, 187; *Ins. Co.* v. *McCain*, 6 Otto, 84.

The company could doubtless waive written assent to the material alterations. *Adams* v. *McFarlane*, 65 Maine, 152; *Wood* v. *Poughkeepsie Ins. Co.* 32 N. Y. 619. In the absence of any known restrictions of authority, the agent could do the same. It is common knowledge that the authority of an agent comprises not what is expressly conferred, but also, as to third persons, what he is held out as possessing. Hence the principal is frequently bound by the act of his agent, performed in excess, or even in abuse of his actual authority; but this is only true as between the principal and third persons, who, believing, and having a right to believe, that the agent was acting within the scope of his authority, would be prejudiced if the act was not considered that of the principal. *Barnard* v. *Wheeler*, 24 Maine, 412, 418; *Clark* v. *Metropolitan Bank*, 3 Duer, 248. This doctrine is established to prevent fraud and proceeds upon the ground that when one of two innocent persons must suffer from the act of a third, he shall sustain the loss who has enabled the third person to do the injury. Story, Ag. § 127.

Of course when restriction of authority is brought home to the knowledge of those with whom the agent deals, his acts in excess of such restricted authority will not bind the principal. *Ins. Co.* v. *Wilkenson*, 13 Wall. 222. Thus where one of the express conditions of a policy was that "no officer, agent, or representative of a company shall be held to have waived any of the terms and conditions of the policy, unless such waiver shall be indorsed hereon in writing," it was held that this limitation of power of the agent to waive the conditions was brought to the knowledge of the insured by the policy itself, and any attempted waiver otherwise than therein stipulated, was not binding upon the company. *Walsh* v. *Hartford F. Ins. Co.* 73 N. Y. 5, 9. There is no such clause in the policy now before us.

According to the stipulation in the bill of exceptions, the entry must be,

*Defendant defaulted. Interest to be added from January 22, 1883.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL, JJ., concurred.