[S. F. No. 2631. In Bank.—October 16, 1903.]

EDWIN PARRISH, Appellant, v. ROSEBUD MINING AND MILLING COMPANY et al., Defendants; W. S. McCOR-NICK, Respondent.

FIRE INSURANCE—NUMEROUS POLICIES—CONTRACT WITH OWNER—INDEMNITY BOND—DEFENSE BY SURETY.—In an action upon an indemnity bond, by the assignee of a fire insurance company, to recover money paid on a policy against the surety on the bond, where it appears that the bond was attached to a contract reciting that the owner of the property insured and destroyed by fire was about to institute suit against twelve fire insurance companies enumerated, including plaintiff's assignee, involving the same questions of law and fact, and that the fire insurance company's assignor was desirous of adjusting the loss without litigation, and that in consideration of the money paid, in the event that in any of such actions, judgment be rendered in favor of the defendant therein, the money was to be returned, for which return the surety was bound, the surety may defend the action upon proof and finding that a judgment rendered for a defendant in one of the actions was based upon a defense not available to plaintiff's assignor, and not included "in the same questions of law and fact involved in all of said actions."

ID.—SURETY NOT ESTOPPED BY RECITAL IN CONTRACT—ESTOPPEL IN HIS FAVOR.—The surety was not estopped by the recital in the attached contract from showing that questions of law and fact were involved

in one of the actions, which were not involved in the other actions; but was entitled to rely upon the recital in the contract as the recital of plaintiff's assignor, as well as that of the owner of the insured property, and that he was to be held to repayment only in case the same questions of law and fact were involved in all the actions. The estoppel was in his favor, but not against him.

ID.—ORAL STATEMENTS TO AGENT—UNTRUE WRITTEN APPLICATION TO COMPANY NOT BOUND—SHARING COMMISSIONS—NOTICE.—Where the agent of plaintiff's assignor was not in fact the agent of the insurance company which had a different defense, and did not assume to act for it in soliciting or issuing its policy, but there was an agent of that company between it and the agent of plaintiff's assignor, the fact that the former shared his commissions with the latter does not prove that such other insurance company was affected with notice of any statements made by the manager of the owner to the agent of plaintiff's assignor, not communicated to the agent of the other company, nor reproduced in the written application upon which its policy was issued, upon the untruthfulness of the statements of which its policy was defeated.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Edward A. Belcher, Judge.

The facts are stated in the opinion of the court.

Chickering, Thomas & Gregory, and Chickering & Gregory, for Appellant.

Sureties are estopped to deny the facts recited in their obligations. (Pingrey on Suretyship and Guaranty, sec. 59; 20 Am. & Eng. Ency. of Law, p. 461; *People* v. *Jenkins,* 17 Cal. 500; *McMillan* v. *Dana,* 18 Cal. 339; *Ogden* v. *Davis,* 106 Cal. 32; *Smith* v. *Fargo,* 57 Cal. 157; *Bowers* v. *Beck,* 2 Nev. 150; *People* v. *Huson,* 78 Cal. 154.) Packard was the agent of all the companies, and knowledge to him was chargeable to each company represented by him. (*Abraham* v. *North German Ins. Co.,* 40 Fed. 717; *Indiana Ins. Co.* v. *Hartwell,* 123 Ind. 177; *Packard* v. *Dorchester Fire Ins. Co.,* 77 Me. 144; *Hahn* v. *Guardian Assurance Co.,* 23 Or. 576;[1] *Kansel* v. *Minnesota Ins. Co.,* 31 Minn. 17;[2] *Stone* v. *Hawkeye Ins. Co.,* 68 Iowa, 737;[3] *Liverpool Ins. Co.* v. *Van Os,* 63 Miss. 431;[4] *Heath* v.

[1] 37 Am. St. Rep. 709.        [3] 56 Am. Rep. 870.
[2] 47 Am. Rep. 776.        [4] 56 Am. Rep. 810.

*Springfield Ins. Co.,* 58 N. H. 414; *Hamilton* v. *Aurora Ins. Co.,* 15 Mo. App. 59.)

Lloyd & Wood, for Respondent.

The Western Assurance case was lost upon a defense not admissible to plaintiff's assignor, and the surety is not estopped from showing it. (*Miller* v. *Moses,* 56 Me. 128; *Southeastern R. Co.* v. *Warter,* 6 Hurl. & N. 523; *Jones* v. *Sasse,* 18 N. C. (1 Dev. & B.) 464; *Bower* v. *McCormick,* 23 Gratt. 327, 328; *Kepp* v. *Wiggett,* 10 C. B. 35.)   Declarations of Packard could not prove his agency. (*Huntsvill Belt etc. Co.* v. *Corpenning Co.,* 97 Ala. 687.)

BEATTY, C. J.—The plaintiff is assignee of the Lion Insurance Company of London for collection, and sues upon a bond in the sum of $7,125, executed to the company by W. S. McCornick (doing business as McCornick & Co.) and another defendant. McCornick alone was served and defended, judgment passed in his favor, and plaintiff appeals from the judgment and an order denying him a new trial. The condition of respondent's bond was: "That if the Rosebud Mining and Milling Company of Colorado, or its assigns, shall in all things stand to and abide by and well and truly keep and perform the covenants and conditions and agreements as set forth in the instrument attached hereto, then the above obligation shall be void, otherwise to remain in full force and virtue." The instrument attached was a contract between the Rosebud Mining and Milling Company and the London Company in relation to a policy of insurance in the sum of $7,500 on the mill of the Rosebud Company, which had been destroyed by fire. It recites that the Rosebud company is about to institute suits against the London company, the Western Assurance Company of Toronto, and other companies enumerated (twelve in all); that "the same questions, both of law and of fact, are or will be involved in all of said actions concerning the liability of said insurance companies"; and that the London company "is desirous of adjusting the said loss without the necessity of litigation, in consideration of the covenants and agreements hereinafter contained on the part of the said" Rosebud company. Then follows: "First," an acknowledgment of the receipt of

$7,125 from the London company, "and in consideration of the said payment" a release of the London company from liability on the policy; and, "Second," the promise following, that is to say: "The said Rosebud Mining and Milling Company does hereby agree that in the event that in any of said actions by said Rosebud Mining and Milling Company against any of the aforesaid insurance companies to recover upon the said policies a final judgment be rendered in favor of the defendant therein, that the said Rosebud Mining and Milling Company will immediately repay, upon demand, to the said Lion Fire Insurance Company of London, the said sum of seven thousand one hundred and twenty-five ($7,125) dollars," being ninety-five per cent of the face of the policy. It is also agreed that upon a settlement with any of the companies, the London company "shall receive as favorable terms of settlement for such loss as shall any other company interested therein now or hereafter obtain." But, as the other companies have been settled with on the same terms as the London company (except as to stipulation to repay), this part of the agreement may be left out of view.

The contract was prepared in San Francisco by the London company and forwarded to Lavagnino, the agent of the Rosebud company, by whom it was executed in the name of the corporation. He then procured McCornick to execute the bond, and the two were returned from Salt Lake City to the agent of the London company at San Francisco, who thereupon paid to the Rosebud company the amount stated in the contract ($7,125). Afterwards, in an action brought by the Rosebud company against the Western Assurance Company of Toronto upon its policy, final judgment was recovered by the latter, and thereupon the London company demanded of the Rosebud company and McCornick repayment of the $7,125, which being refused, this action was commenced.

McCornick defends the action upon several grounds. He denies that the plaintiff is assignee. He denies that Lavagnino had any authority to execute the contract in behalf of the Rosebud company, and contends that if the Rosebud company is not bound by the contract there can be no recovery on his bond. The plaintiff contends, upon the

other hand, that the assignment was sufficient in all respects to enable him to maintain the action; that Lavagnino had original authority to execute the contract; that even if he had not, his action was ratified by the corporation, and that even if not ratified McCornick is estopped to deny that it is the contract of the Rosebud company. These and other propositions which have been elaborately argued by counsel require but little consideration, in view of our conclusion upon a point that remains to be stated. We assume, and we are also of the opinion, that the assignment to plaintiff is sufficient, and that the contract is binding upon the Rosebud company.

But the superior court in relation to one of McCornick's defenses found upon sufficient evidence the following facts:—

"In the month of March, 1894, the Rosebud company was the owner of a mill or reduction-works for the working and reducing of quartz rock containing gold and silver, situate at Squaw Gulch, near Cripple Creek, in the county of El Paso, state of Colorado; and on or about the tenth day of March, 1894, one Frank Millington, a bookkeeper in the employ of said Rosebud company, under instructions from the manager of said company, applied to said Packard, at his office in the city of Denver, for insurance upon said mill against loss by fire, in the sum of $50,000, and explained to him the general plan of the mill, and stated that the woodwork under the roaster had been charred; and thereupon said Packard undertook and agreed to place said insurance with the various companies for which he was agent, and with other companies, which he could procure to assume and take part of such risk. And thereupon said Packard proceeded to prepare an application for such insurance to be executed by said Rosebud company, and used for such purpose a printed form embracing sundry questions, which were to be answered by the party applying for the insurance, and which questions, when answered, would form the basis of the contract of insurance; and in said form of application, so used by said Packard, the following questions occurred:—

"'If ovens, are they detached from woodwork on all sides?' and also, 'Have the premises ever been on fire?'

"In filling out the answers to such questions, said Packard inserted the answer 'Yes' to the first of the aforesaid questions, and the answer 'No' to the second of the aforesaid questions, and delivered the said form of application, with such answers inserted therein, to said Millington, by whom the same was taken to Cripple Creek and presented to G. Lavagnino, the manager of said Rosebud company, for his signature.

"Thereupon, and on the following day, the said Lavagnino went with said form of application to the office of said Packard in Denver, and returned to him the said application; . . . but before returning said application to said Packard, the said Lavagnino had erased therefrom each of the aforesaid answers to the above-mentioned questions, and in place and stead of the answer 'Yes' to the first of said questions, had inserted the answer 'No' thereto, and in addition thereto had inserted the words 'our calciner is built in part on a pier of stone and brick, and part on slanting planked platform supported by timber,' or words of similar meaning; and in place of the answer 'No' to the second of the above-mentioned questions, said Lavagnino had inserted the words, 'that the plank platform has been charred in one place and some of the woodwork had been taken out,' or words of like meaning; and the said form of application contained the erasures, alterations and additions aforesaid at the time it was returned to said Packard, and was not signed by any one on behalf of the Rosebud Company.

"After the return of said form of application to said Packard, he and the said Lavagnino proceeded to a discussion of the matters connected with said answers, and thereupon said Lavagnino exhibited to said Packard a map or plan showing the construction of the oven or roaster at said mill, and the connection between the same and the woodwork, and explained the same to him, and at the same time said Lavagnino stated to said Packard the fact that fire had been communicated from said oven or roaster to said woodwork and had caused the charring of the planking in certain places and that the same had been removed.

"Said Packard, upon being informed of the facts aforesaid, and upon an examination of the said map or plan,

assured Lavagnino that the original answers which had been inserted in the form of application by Packard were correct, and that it was not true that the oven or roaster was connected with the woodwork.

"Thereupon said Packard prepared a new form of application, and therein inserted the answers to the questions aforesaid which he had written in the first or original form of application, and which had been erased therefrom by Lavagnino, and tendered the same, when so prepared, to said Lavagnino for signature, and stated to him that it was all right and that he had assumed the responsibility for the answers; and Lavagnino, relying upon the statements and assurances of Packard and fully believing that Packard was authorized in the premises to determine the matters aforesaid, was induced thereby to, and did, in good faith, sign said application for the Rosebud company, and delivered the same to Packard.

"IX.  Immediately after the receipt of said application, Packard took the same to one H. T. Lamey, manager at Denver of the Western Assurance Company of Toronto, and exhibited the same to him, and requested him to take a part of the risk upon said mill; but Packard did not communicate to said Lamey, nor was said Lamey otherwise informed of any of the facts stated to him by Lavagnino or Millington concerning the construction of said oven or roaster, or of the exhibition to him of said map or plan, or of the fact that fires had been communicated to the woodwork supporting said oven or roaster; nor did he communicate to said Lamey, nor was Lamey otherwise informed of the fact, that Lavagnino had made the erasures, alterations, and additions and wholly upon the showing made by said application, or that Lavagnino had stated to him the facts and circumstances aforesaid; and said Lamey acting wholly upon the showing made by said application for insurance and the answers to the questions therein as presented to him, agreed to accept a part of such risk; and thereafter, and on March 21, 1894, did, for and on behalf of the Western Assurance Company of Toronto, make and deliver to the Rosebud company a policy of insurance in the sum of $6,500 upon the aforesaid mill or reduction-works.

"In said policy of insurance, so made and issued by said Western Assurance Company of Toronto, it was stated as follows:—

"Reference is hereby made to the application of assured, signed and on file in the office of D. C. Packard, Denver, Colorado, which application is hereby made a part of this policy, and a warranty on the part of assured as to the statements therein contained, concerning this insurance.

"And said Packard did also, and on March 21, 1894, sign, issue, and deliver to the Rosebud company a policy of insurance No. 699,043, by the Lion company, for the sum of $7,500, and thereby insured for said sum the said mill and reduction-works.

"And said Packard did also, on or about the date aforesaid, issue, either as agent therefor, or procure the issue from their agents, policies of insurance upon said mill for diverse sums of money, from the following-named other insurance companies: The Atlas Insurance Company of London; the Alliance Assurance Company of London; the Home Mutual Insurance Company; the Prussian National Insurance Company; the Scottish Union and National Insurance Company; the Lancashire Insurance Company; the Royal Exchange Assurance Corporation; the Providence Washington Insurance Company; the Michigan Fire and Marine Insurance Company; and the Sun Insurance Office; and that the aggregate of the policies issued by all of said companies was the sum of $50,000."

One fact not stated in these findings, but clearly established by uncontradicted evidence, and claimed by appellant to be material, is that Packard received from Lamey—the manager of the Toronto company—a share of the commissions allowed upon the policy of that company.

McCornick's contention in view of these facts is, that the judgment subsequently rendered in favor of the Toronto company in the suit upon its policy did not establish his liability upon his bond, because the action was successfully defended upon a ground not available to the London company. He claims, in other words, that in view of the recital in the contract between the London company and the Rosebud company (to which his undertaking referred) that "the same questions both of law and fact are or will be in-

volved in all of said actions,''—he was not to be bound by
a judgment in favor of a company having a valid defense
which the London company could not make. Against this
contention it is urged by the appellant that upon the facts
found by the trial court and established by the evidence as
above set forth, the case against the two companies was
exactly the same, or that, if there was any material differ-
ence, the judgment in favor of the Toronto company was not
based upon that difference; and further, that even if there
was a material difference in the defenses of the two com-
panies, and the ·judgment in favor of the Toronto company
was solely due to that difference, McCornick is nevertheless
estopped by the very recital upon which he relies to allege
such difference as a defense to this action.

As to the last objection, we think there is no estoppel.
The general proposition that sureties are estopped to deny
the facts recited in their obligations, whether true or false,
does not apply in this case. The recital referred to is not
contained in McCornick's bond, but in the contract between
the two corporations. It is their statement of the fact, not
his,—their assurance to him, not his assurance to them, or
to either of them. The contract, although executed only by
the Rosebud company, purports to be the contract also of
the London company. It is entitled ''Memorandum of
agreement, etc., by and between the Rosebud Mining and
Milling Company, etc., and the Lion Fire Insurance Com-
pany of London,'' and concludes as follows: ''In witness
whereof the said parties have hereunto set their hands and
seals the day, month, and year herein first above written.''
It was as above stated prepared by the London company,
and forwarded from San Francisco to Salt Lake City with
the bond, to be executed, the one by the Rosebud company,
and the other by the sureties. When the two instruments
were presented to McCornick, after the contract had been
signed by the Rosebud company, he was justified by a com-
parison of their terms in assuming that, on their return to
San Francisco, the contract would be subscribed by the
London company, and in acting accordingly. It may be
supposed that he knew what defenses the London company
could make to an action on its policy, and that he was willing
to be bound by a judgment in a like case, but it cannot be

supposed that he would have been willing to be bound by a judgment in any one of a dozen other cases presenting, so far as he could know, questions materially different. If, therefore, he had a right to rely upon the recital in the contract of the London company that the questions in each case were or would be the same, he ought not now to be precluded from showing that the questions in the only case defended were not the same.

We think he was justified in relying on the recitals of the contract as the statement of both the parties. Although it may have been principally for the advantage of the Rosebud company, it was also for the advantage of the London company that the contract should be executed with a sufficient guaranty that it would be performed. McCornick, on the other hand, could derive no advantage from the contract, and it is found that he was not indemnified for the risk he incurred in guaranteeing its performance. It is, moreover, evident that the only guaranty which the London company desired, or had a right to demand, was of repayment in the event it should be held in a case involving the same questions of law and fact presented by its own case, that it was not liable. If, therefore, in enumerating the cases in which its liability might be tested, one was included in which a defense could be made not available to it, such inclusion was an evident mistake of fact common to all the parties to the transaction. Under these circumstances, we think it would be a misapplication of the equitable doctrine of estoppel to hold McCornick bound against the truth, by a statement not made by him, to induce the London company to act, but rather a statement made by the company to induce him to act. Such estoppel as there is, we think, operates in his favor, not against him. If he has succeeded in showing that the case against the Toronto company was not the same as the case against the London company, the judgment in favor of the Toronto company does not establish his liability, unless it appears to have been based upon a defense equally available to the London company.

These, then, are the questions upon which our decision must depend: 1. Did the Toronto company have a defense which the London company could not have made? and, if

so, 2. Was that special defense the ground of the decision in its favor?

The proposition is not disputed that if Lavagnino at the time he applied for insurance made a full and truthful disclosure to Packard of the facts affecting the risk, no mistake or omission of the latter in filling out the written application referred to in the policies subsequently issued could have been made ground of defense by any insurance company whose agent he was. And there is no question that he was the agent of the London company. But the appellant contends that he was also the agent of the Toronto company as to the particular policy upon which it was sued, and that the decision in its favor was based, not upon the ground that statements to Packard could not bind it, but wholly upon the ground that the statements made to him by Lavagnino, in regard to previous fires on the premises, fell far short of the truth.

Was Packard the agent of the Toronto company? The appellant, in support of its contention that he was, cites the following cases: *Abraham* v. *North German Ins. Co.*, 40 Fed. 717; *Indiana Ins. Co.* v. *Hartwell*, 123 Ind. 177; *Packard* v. *Dorchester Mut. Fire Ins. Co.*, 77 Me. 144; *Hahn* v. *Guardian Assurance Co.*, 23 Or. 576.[1] In each of these cases the person held to have been agent of the defendant company had assumed to act as such in soliciting or issuing the policy, and his real or ostensible authority was established by facts different from and more persuasive than anything disclosed by this record.

In the first case cited he took no written application from the insured, but examined the premises himself, fixed the amount of the premium, collected it, undertook to forward it to the company, and to return the policy. The policy was issued as he had promised it would be. These facts were held to make out a case of agency in the absence of any evidence of the interposition of any other agent of the company in the transaction. Here there was an agent of the Toronto company (Lamey) between it and Packard. Packard did not forward the premium to the company, but presumably Lamey did, for he deducted the commission and shared it with Packard, and he, as the court finds, delivered

[1] 37 Am. St. Rep. 709.

the policy_to the Rosebud company. It does not appear that the Toronto company knew of any claim of Packard to represent them as agent, or, indeed, anything about him, except that as agent of other companies he had the custody of the written application referred to in its policy.

In the Indiana case the persons held to be agents were a firm of insurance brokers, with whom the defendant company had been in the habit of doing business,—to whom they sent their policies for delivery to the insured, who collected the premiums, and, after deducting their commissions, remitted the balance to the company.

In the Maine case the person soliciting the policy described himself as agent in the written application forwarded to the defendant company, and the policy, when issued, had his name indorsed on it as agent.

In the Oregon case the person who collected the premium, and at whose request the policy was issued and delivered by the defendant company, was its agent, but it was claimed that he was acting in that instance outside of his territorial limits. As in the first case above cited, there was no evidence of the interposition of any other agent between him and the company. Other cases cited by appellant merely go to the general proposition that notice to the agent of facts affecting the risk, and which are omitted or misstated in the written application, is notice to the insurer. Upon this review of the decisions bearing upon the point, we do not think we would be justified in holding that the Toronto company was affected by any statements of Lavagnino to Packard not substantially reproduced in the written application exhibited to Lamey. We are also of the opinion that the answer "No" inserted by Packard in the written application for insurance, referred to in the policy after the question, "Have the premises ever been on fire?" was in substantial contradiction of the statement of the facts made to him by Lavagnino, as found by the court. And the same is true of his answer "Yes" to the question whether the furnace was detached from the woodwork of the mill.

The Toronto company, therefore, did have a defense not available to the London company, and the only remaining question is whether that was the defense upon which it defeated the action. As to this question, the case seems to have

been tried upon the theory that the burden of proof was on the defendant, for all the evidence upon the point was introduced by him. We are inclined to the opinion, however, that although the plaintiff made a. sufficient *prima facie* case by proof of a successful defense in an action upon one of the policies named in the contract, his right of recovery was defeated by proof of facts constituting a good defense to that action which would have been no defense to an action against the London company, unless *he* could show that it was not upon this special defense that the action was defeated. However this may be, it clearly appears that the verdict in favor of the Toronto company was rendered in obedience to the following instruction of the court:—

"I advise the jury to find a verdict for the defendant, on the ground that the proof is clear that there were fires in this mill prior to the making of this application and the issuance of this policy of insurance, and that the answer to the question in the application is not true, and was not true at the time it was made; also, that the roaster was connected with and stood upon the woodwork of the mill, and that the answer to the question upon that subject in the application was not true. Upon no other grounds is this instruction put."

Here, then, we find plainly stated the sole ground upon which the decision in favor of the Toronto company was placed,—viz., *that the statements contained in the written application were not true.* This, as we have shown, was a complete defense for the Toronto company, but no defense for the London company. What the evidence respecting the fires was we do not know, and it is impossible to say what might have been the instruction of the court or finding of the jury if Lavagnino's statements in that regard had been proved in an action against one of the companies of which Packard was agent.

We discover no material error in the rulings of the superior court, and the judgment and order appealed from are affirmed.

Shaw, J., McFarland, J., Van Dyke, J., and Henshaw, J., concurred.