January 10, 1910.

No. 4788.

(Court of Appeal, Parish of Orleans.)

**MORRIS McGRAW WOODENWARE COMPANY, LTD (in Liquidation) vs. GERMAN FIRE INSURANCE CO. OF PITTSBURG, PA.**

H. L. Favrot, Parkerson & Bruenn, plaintiff and appellee.

O'Donnell & Hollingsworth, defendant and appellant.

ESTOPINAL, J.—The case is correctly stated by the District Judge as follows:

Plaintiff's stock of merchandise was totally destroyed by fire, April 5, 1908, the loss amounting to $61,106.02. Plaintiff claims that it was insured by thirty-three companies for $67,500.00.

The defendant is one of said companies, it having issued a policy of one thousand, five hundred dollars ($1,500.00), and the portion of loss to be borne by it is one thousand, three hundred and fifty-seven dollars and ninety-one cents ($1,357.91), but it paid only $1,222.12, leaving a balance due of $135.79, which plaintiff claims in this suit.

Defendant admits that the fire occured resulting in the total destruction of the plaintiff's stock in trade and a loss of $61,106.02, and its liability under the policy issued by it, but it contends that the total insurance was $75,000, (not $67,500.00), in thirty-seven (not thirty-three) companies, and that its proportion of the loss is $1,222.12, which it has paid.

The testimony shows that plaintiff gave its insurance to the insurance agency of Adolphe Rocquet & Company, Limited; that this agency distributed the risk among the insurance companies represented specially by it, and insurance companies represented by other agencies and agents. That it selected companies in which to place the risk without direction from or discussion with plaintiff; that plaintiff had the right to reject any and all policies when presented by said agency; that plaintiff fixed only the amount of insurance to be carried by it and Rocquet & Company, Limited, placed the risks; that prior to March 31, 1908, plaintiff was insured for $75,-000.00; that on March 31, 1908, plaintiff directed Adolphe Rocquet & Company, Limited, to "cut out" $7,500.00 worth of insurance, thus reducing the total insurance to $67,500.00; that said agency retained in its possession four policies amounting to $7,500.00; that after March 31, 1908, plaintiff held only thirty-three policies, amounting to $67,500.00; that the fire occurred April 5, 1908; that some of the thirty-three companies have settled in full with plaintiff; that others, among which is defendant, have made only partial settlements, without prejudice.

Plaintiff takes the position that having instructed Rocquet & Company, Limited, to reduce their insurance from $75,000.00 to $67,500.00, and having refused to accept policies aggregating $75,000.00, when presented to them before the fire by the Rocquet Company, Limited, and the Rocquet Company, Limited, having then withheld four policies aggregating $7,500.00; that this constitutes the notice required to the company, and said four policies were in consequence canceled.

On the other hand defendants contend substantially that Rocquet & Company, Limited, were not agents of the Insurance Companies in question, but acted as insurance

brokers, and that as such became the agent of the insured.

The Rocquet & Company should have notified the four companies or their authorized agents, of the plaintiff's request that the policies be canceled, and that until then they were not so canceled. The record shows that Rocquet & Company, Limited, intended to send such notices, but it never reached the insurance companies.

The McGraw Company contend that they did not employ the Rocquet Company, Limited, as their agents, but dealt with it as an insurance agency, and the agency had ample and timely notice from the McGraw Company that they did not wish to carry the amount of insurance that they formerly carried.

It may be true that McGraw Company never considered Rocquet & Company, Limited, in any other light than as insurance agents, and so they were quoad, the companies which they had **authority** to represent, but when they undertook to place risks in companies other than those they were authorized to represent, and this they had a right to do under their arrangement with the McGraw Company, they were obliged to do so through agencies having authority to represent those other companies, and hence Rocquet & Co. were merely the intermediary between their customer, the McGraw Company, and the authorized agents of those companies, in other words Rocquet & Company, Limited, while engaged in "keeping up" the insurance, did so as brokers quoad the companies represented by other agencies. It will not avail the McGraw Company to say that Rocquet & Company, Limited, were not authorized to act in that capacity.

It appears to us that the McGraw Woodeware Company, Limited, long established in an extensive business, must have been measurably familiar with the method and manner of placing insurance by insurance agencies. That

—129—

they were ignorant of the character of the relations arising between an insurance agency, themselves, and an insurance company which such agency was not authorized to represent and the law governing as between the insured, the authorized agency, and the insurance company, is evident, and it is this issue that the Court is called upon to determine.

Rocquet & Company, Limited, were insurance agents as defined by the Supreme Court in the case of **New Orleans vs. Rhenish, Westphalia Lloyds, 31 An. 781,** as follows:

"They negotiate insurance upon commission, and to increase their income **they procure authority from foreign companies to place risks for them,** and they solicit the patronage of persons desiring to insure, they are under no obligations to solicit for any particular company, each company simply agrees to accept such risks as they have placed for them."

The fact is not disputed that Rocquet & Company, Limited, had never been given **authority** by the four companies involved, to place risks for them. Each one of these four companies had its own **Insurance Agency** to which it had **given authority to place risks.** Rocquet & Company, Limited, had no such authority, and hence the relation of agent and principal did not exist.

As before stated, on the 31st of March, 1908, Rocquet & Company, Limited, brought to the McGraw Company policies aggregating $75,000.00. All of the policies were admittedly in force on that day. The McGraw Company refused to accept that amount of insurance and refused to accept the policies, instructing Rocquet & Company, Limited, to reduce the insurance to $67,500.00. Naturally, Rocquet & Company, Limited, who **were not directed** to cut out any particular policies, elected to withdraw four policies aggregating $7,500.00

taken in four companies of which they were not the agents, and returned to the McGraw Company, the policies (thirty-three in number) aggregating $67,500.00, and intended to notify the **authorized** agents of the companies in which the rejected policies had been taken, to cancel same. This Rocquet & Company, Limited, failed to do.

In our view of the matter it is immaterial whether the McGraw Company intended to deal with Rocquet & Company, Limited, as agents or not, or whether the agreement with Rocquet & Company, Limited, to keep up the insurance of the McGraw Company, up to a certain figure be termed an employment by the McGraw Company, of Rocquet & Company. The facts remain that the McGraw Company did arrange with the Rocquet Company, Limited, to have their insurance "kept up," by attending to expired and expiring policies and having them renewed, and these relations between Rocquet & Company and the McGraw Company, existed for some time, and were satisfactory to the McGraw Company.

Rocquet & Company "kept up" the insurance, and had not been instructed to place the risks in any named companies, and they placed the risks in thirty odd companies.

It may not have been, as before stated, that the McGraw Company intended to use Rocquet & Company, Limited, as their agents, but Rocquet & Company, Limited, in carrying out their mandate, did so in the usual course. They were converted into brokers quoad companies not represented by them, and as such became the agents of the McGraw Company.

A broker ordinarily has implied authority to do everything necessary to effect the business about which he is employed unless restricted by **express instructions** or the usage of the trade.

No restrictions of any kind were placed on Rocquet &

Company, Limited, and they placed the insurance in accordance with the usage of the business.

Our attention is directed by counsel for plaintiff to Cooley's Brief on Insurance, claiming that the rule laid down in the cases cited therein is specifically: "If an insurance agent to whom application for insurance is made, procures a policy from a company for which he is not the regularly appointed agent, he will, for that policy, be regarded as the agent of the company issuing the policy, so that the latter will be bound by his acts and statments just the same as if he was its regularly appointed agent."

We have established the status of Rocquet & Company, Limited, to be that of "brokers" in the employ of McGraw & Company. It may not be questioned that a broker cannot act as the agent of both parties when their interests are conflicting.

As we appreciate the law governing foreign companies, the only persons authorized to represent them as agents are those persons who are duly authorized by the insurance company, and to whom has been issued a certificate by the Secretary of State, pursuant to the provisions of Act 105 of the Legislature of 1898.

That the authority of Cooley cited by counsel for plaintiff does not apply to a "broker," is self evident from the following citation from that author's work found at page 2798, Vol. III.

"Notice canceling a policy given to a broker employed generally to look after all of the policy holder's insurance business, and who has exercised such employment continuously for a considerable period, is sufficient. This is the principle underlying the leading case of **Stone vs. Franklin Insurance Company, 105 N. Y. 543, (12 N. E. 45)**, and it has been

— 132 —

approved and followed in numerous well considered cases.

"In another leading case (**Hartford Fire Insurance Company** vs. **Reynolds, 36 Mich. 502),** the rule thus laid down was said to apply even where the insurance agent acts as a broker for the insured, and especially where he exercises his own discretion in selecting the companies among which the risk is to be distributed (**Dibble vs. Northern Assurance Co., 70 Mich. 1 [37 N. W. 704]** . So where the insured employs an **insurance agent to keep certain property continually** insured for a certain amount, part of the insurance being taken in companies represented by the agent, and part through other companies (**Schauer vs. Queen Ins. Co., 88 Wis. 561 [6 N. W. 994]** ), such agent must be regarded as a **broker,** and authorized to receive for the insured notices of cancellation."

These are precisely the conditions in the case at bar, and hence it follows that if notice of cancellation by the insurance company given to Rocquet & Company, Limited is held to be notice to the McGraw Company, certainly, notice of cancellation by the McGraw Company, to Rocquet & Company, Limited, was not notice to the Insurance Company.

The issues as made by the facts in the case at bar are not by any means new, having been passed upon by Courts of many jurisdictions.

"Though a duly appointed agent of an insurance company must, as regards that company, be regarded as the agent of the insurer, yet, as to other companies, in which he procures insurance for a property owner, he may be considered the agent of the insured."

> Smith & Wallace Co. vs. Prussian Nat. Ins. Co., 68 N. J. Law, 674.

"So he may, by special agreement, as an agreement to keep an owners' property insured, become the agent of the insured."

> Johnson vs. North British Ins. Co., 66 Ohio State Reports, p. 6 (6 3N. E. 610).

"An insurance agent to whom a request for insurance is made and who, acting as broker, procures all or part of such insurance through other agents of companies not represented by him, is the agent of the insured."

> Parish vs. Rose Bud Mining & Milling Co., 140 Cal. 645 (74 Pac. 312).

"Though under special circumstances, a broker may be the agent of the insurer, the mere fact that he receives a commission from the insurer for placing the insurance with him, does not change his character as an agent of the insured."

> Mutual Firemens Ins. Co. vs. Thomas, 92 Fed. 127; East Texas Fire Ins. Co. vs. Brown, 82 Texas 631; Seaman vs. Knapp Stout & Co., 89 Wis. 171; American Fire Ins. Co. vs. Brooks, 83 Md. 832.

We are of opinion that the four policies in question; Western Insurance Company, for $1000.00; Norwich Insurance Company, for $1000.00; Illinios National Insurance Company for $2000.00, and the Cosmopolitan Insurance Company, for $2,500.00 not having been canceled by proper notice given to their authorized agents, were alive and in full force and effect at the time of the fire which destroyed plaintiff's property, and are liable for their pro-rata share of the loss suffered.

— 134 —

Rocquet & Company, Limited, were never their agents. Their authorized agent was never notified to cancel the policies which are admitted to have been in force on March 31, 1908. Delivery of the policies to Rocquet & Company, Limited, was delivery to the McGraw Company.

We think the judgment rendered by the Court a qua was error, and accordingly, it is now ordered, adjudged and decreed, that the judgment appealed from be, and it is hereby avoided, set aside and reversed, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiffs suit with costs in both courts.

June 21, 1909.

## On Rehearing.

ST. PAUL, J.—On reconsideration of this case we find something to add to the conclusions heretofore reached but little to change.

We are of opinion that the question, whom did Rocquet & Co., represent is one of law and not of fact alone. If it

were merely the latter we would have had little difficulty in reaching a conclusion.

Aside from the oral testimony in the record, the sample policy produced by plaintiff, which had been in its possesion for a year or thereabout, shows that Rocquet & Co., were the representatives of plaintiff in connection with its insurance, being in possession of its private insurance forms with their own (Rocquet & Co's.) business "card" printed in red ink and large type across the face thereof. Furthermore these same forms required on their face that when attached to a policy they should show who was agent for the Insurance Company.

It is therefore idle to say that plaintiff dealt with Rocquet & Co., in the belief that they were agents for all the insurance companies whose policies plaintiff held merely because the policies had been physically brought to them by Rocquet & Co., and **pasted** on the outside of each policy was another business card of the latter showing **not** that they were the agents of the conmpany but that the business in which they were engaged was "insurance."

There was this difference however between plaintiff and the insurance companies; that plaintiff knew and evidently consented that the "card" of Rocquet & Co. should appear **conspicuously** upon their private insurance forms, whilst there is nothing in the record to show that either the insurance companies or their agents consented or even knew that Rocquet & Co. were pasting their card upon the policies before delivering them to plaintiff. In other words, there is nothing to show that the insurance companies consented to or even knew of that by which plaintiff claims to have been misled, whilst it appears affirmatively that plaintiff had full knowledge of and permitted to pass unchallenged a state of affairs which might readily induce the insurance com-

panies to believe that Rocquet & Co. had charge of plaintiff's insurance.

Nor do we accept the doctrine advanced by plaintiff that Rocquet & Co. were "dealers in a commodity" of which plaintiff had need and of which it ordered just so much and refused to take any more; in other terms, that the transactions were all strictly between plaintiff and Rocquet & Co. Insurance policies are not "commodities," nor "goods" nor merchandise, of which one can acquire a supply which he then sells or assigns or transfers to another, thus making two separate transactions. But an insurance policy is a single contract strictly personal between the underwriter and the assured, bringing them at once into direct contractual relations with each other. The intermediary between these two is not a principal in two distinct transactions, but he is the agent of either one or the other, or of both parties to one single contract.

Nor do we find anything in Act No. 105 of 1898 that makes Rocquet & Co. an agent of the insurance company. The section of the act relied on by plaintiff in this respect is Section 23, page 151, which provides that any person who shall solicit insurance for a consideration or transmit for a person other than himself an application for insurance or act in any way in the negotiation for insurance, shall be "deemed an insurance agent within the intent of the act should he receive from the company any compensation whatever, and shall become liable to all the duties, requisitions, liabilities and penalties to which an agent of such company is subject."

It is to be observed first, that the section refers only to persons who receive compensation "from the company," and, secondly, that though such person shall be deemed an insurance agent within the intent of the act, and shall be liable to all the duties, liabilities and penalties to which

an agent of the company is subject, yet it is nowhere stated that such person shall be deemed the agent of such company. On the contrary, the only penalty or liability which would be incurred by paying a commission to any but a lawful agent is set forth in Section 5, page 146. The whole purpose of Section 23 is simply to make more sweeping the provisions of Sections 3 and 4, page 145.

Now it is nowhere shown that Rocquet & Co. received any compensation whatever from those companies which they did not represent, though it is shown that the agent of those companies shared with them the commissions which they received. Section 5 is not altogether clear as to its meaning, but apparently it has no application to the sharing of commissions between agents of different companies.

At any rate, in 1902, it was deemed necessary to pass another statute on the subject. Section 2 of that Act (No. 167) contains a limited prohibition agains the sharing of a commission by an agent. But even here there is again apparently no prohibition against the sharing of a commission between the agents of different companies. It will be noticed that throughout the statute the indefinite article **a** or **an** is used, while the construction contended for by plaintiff would require the substitution of the definite article **the** as "the agent" for "an agent, "the company" for "a company."

But granting that the statutes are susceptible of two constructions, then in construing their penal features, that interpretation must be adopted which would operate most favorably towards an accused and the words of a statute cannot have two different meanings, one of which is applicable exclusively in criminal matters, and the other in matters civil in their nature.

Finally, conceding that the statute does make it unlawful for the agent of one company to divide commis-

sions with the agent of another company, is it to be presumed, in the face of that fact, that Section 23 can possibly contemplate that the penalty of the unlawful act shall fall on the company, itself not a party thereto. In other words, is it to be assumed in the absence of some clear provision to that effect, that the State of Louisiana, after inviting a company to do business within its limits on complying with certain prerequisites, and after declaring that certain acts on the part of its agents (citizens of the State always) should constitute a crime, yet meant to say that the act of the same agent, beyond the scope of his authority, and in direct violation of a penal statute, should entail consequences on his principal (innocent of any wrongdoing) which might in its ultimate result amount to a confiscation of its property. We do not think so.

We repeat: Rocquet & Co. received no compensation from the companies they did not represent; there was apparently nothing unlawful in their receiving from the agents a part of the compensation which the latter received; but whether lawful or unlawful, and even had they received compensation from the companies direct, they would not thereby have become the agents of such companies.

We have examined the opinion herein first handed down, and now think that in one respect it goes too far. We think that so much of the opinion and syllabus as holds that the only authorized agents of an insurance company are those who hold certificates from the Secretary of State is somewhat too broad in its statement. It was not necessary for the purposes of the case, and must therefore, be taken as **obiter dictum** and considered as stricken from the opinion.

But this in no way affects the main question herein. Rocquet & Co. were in no manner, shape or form the

— 139 —

agents of the companies whose policies figure so prominently in this controversy. They were as we have found and still find, both in fact and law, the agent of plaintiff.

When Rocquet & Co. applied for insurance in behalf of plaintiff and accepted the policies from the agents of the companies, these immediately became binding. They could not thereafter be canceled except by notice to the companies through the agents of the latter. No such notice ever reached the companies' agents. The fact that by custom Rocquet & Co. had the privilege of canceling the policies within a given delay, without cost to plaintiff, their principal, is of no consequence. The proper steps were not taken by plaintiff to avail itself of that privilege, its own agent failed to do the one thing necessary to take advantage thereof.

The policies were, therefore, not canceled, but they were in full force when the loss occurred, and after that it was too late to release some companies to the manifest prejudice of others.

Our former decree was correct and will remain unchanged.

Former decree reinstated.

January 10, 1910.

Rehearing refused January 21, 1910.

February 28, 1910, writ granted by Supreme Court.

April 26, 1910, decree, Supreme Court.