BREAUX, 0. J.
The question is whether plaintiff’s stock in trade, at the time its store was destroyed by fire, on April 5, 1908, was insured for $75,000 or $67,500.
The amount of plaintiff’s loss, to wit, $61,-106.02, was adjusted satisfactorily to all parties concerned.
Plaintiff states that at the time of the fire, on the 31st day of March, 1908, the whole insurance on the stock (and prior to that date) was $75,000; that it was reduced, on March 31, 1908, or prior thereto, to $67,-500.
Defendant, on the other hand, seeks to maintain that the policies amounting to $7,-500 were never canceled, and that at the date of the fire the insurance was $75,000, and that that amount ought to be made to bear the loss instead of the $67,500.
The following are the companies that would be released from paying the amount opposite each name if plaintiff’s position were maintained:
Illinois National. $2,000 00
Norwich Union. 2,000 00
Cosmopolitan. 2,500 00
Western . 1,000 00
$7,500 00
We have before noted that the amount of the loss was $61,000 and some odd dollars.
The difference, as relates to plaintiff, would be that it would collect the amount of its loss from 37 companies instead of 33 companies. It must be paid its loss in either event; it cannot lose. It is contending, as we see it, for an abstract right.
It is true the plaintiff directed Rocquet & Co., a local insurance company, to reduce the amount of its insurance to the sum before stated, viz., $67,500. A Mr. Rudolph of Rocquet & Co. had been ordered whenever a policy of the McGraw Company expired to renew it. In fact, the agency just named had charge of the insurance of the plaintiff company’s stock. The insurance remained, however, under the supervision and control of the plaintiff.
In effecting the insurance of plaintiff’s stock, the Rocquet Agency, as the amount was large, divided with other companies, represented by other local agents (of which Roc-quet & Co. were not at all the agents).
The companies in which the agency placed this insurance other than their own are named above. We will none the less name them again: Illinois National, Norwich Union, Cosmopolitan, ¿nd Western.
A few days before the fire, which destroyed the stock of plaintiff, Rocquet & Co. called on McGraw Company and handed them policies to the amount of $25,000. They retained these and others to the amount of $67,500.
The agency was ordered to cancel, at that time, all policies over and above that amount without naming the companies whose policies were to be canceled. The selection of the companies whose policies were to be canceled was left to the agency.
The fire occurred without any notice having been given of the cancellation to the companies above specially named.
The clerk of the agency fell sick, and that accounts for the want of notice or the oversight by the agency before named in not returning the policies to the companies above specially named.
It will be borne in mind that Rocquet & Co. were not the agents of the companies before specially named. They were represented by other local agents in the city of New *35 Orleans, through, whom the insurance was effected and with whom Rocquet & Oo. divided commissions.
We will state, before closing our statement of facts, that plaintiff was insured in 33, if it he correct in its construction of the law, or in 37 companies, if defendant be correct in its position.
The defendant, the German Fire Insurance Company, is one of the 33 companies according to plaintiff, and 37 companies according to defendant. The policy it issued was for $1,500. It paid $1,222.12, leaving a balance due of $135.79, on plaintiff’s assumption that the policies had not been canceled, for which plaintiff brought suit, and that 37 companies are the amount lost by fire.
The judge of the district court rendered an elaborate opinion in which he held that the amount of plaintiff’s insurance was $07,500 in 33 companies.
An appeal was taken to the Circuit Court of Appeal. The last-mentioned court reversed the judgment of the district court and rendered judgment in favor of defendant, dismissing plaintiff’s suit, and substantially held that plaintiff was insured by 37 companies.
The case is before us on an application for a writ of certiorari.
If Rocquet & Co. was in any way the agent of the defendant insurance companies, it (this defendant company) is liable for the'amount claimed. If it is not liable for the amount claimed, it, and other sums to the amount of $7,500, should then he prorated among the 37 companies.
We have not found it possible to agree with the theory that the agency of Rocquet & Co. was the agent of these companies, nor have we succeeded in finding that the policies had been canceled, although, as before stated, Rocquet & Co. had been ordered to cancel these policies.
These companies, we have noted, had local agents of their own who were authorized to act for them. Rocquet & Co. were not authorized to act for them.
Rocquet & Co. did that which other agents do frequently. It applied to other local agents for policies in order to assist it (Roc-quet & Co.) in carrying the large amount of its insurance for McGraw & Co.
The local agents applied to, obtained the policies, and delivered them to Rocquet & Co., as is the custom.
The evidence shows that it is the custom, whenever insurance is effected by one agency through another agency, these agencies divide commissions.
The insurance companies deal directly with their respective agents. They do not recognize as their agents the agents of other-companies who have entered into an agreement with their agents. We understand that each company mails its policies to its own local agent, who in some instances delivers them to the local agents of another company-in case of insurance made as above mentioned by the agent of another company. The 'accounting is made by each agent with the company he represents. He is charged with the policies, and not the agent through whom the policies are delivered to the insured.
One of the propositions of plaintiff through learned counsel is that the intermediary between an insurance company and a person seeking insurance is the agent of the applicant in procuring the policy, but after the policy has' been issued he ceases to be the agent of the assured and becomes the agent of the insurance company for completing the contract, by delivery of the policy and collection of the premium.
We have found no authority to sustain the position.
There is precedent for holding that the local a-gency was the agent of the insured; to be explicit, that in those instances Rocquet •& Co. wrere the agents of the insured. It *37 looked after the plaintiff’s insurance business, as before stated.
In a case wherein the facts were somewhat similar, that conclusion was arrived at in a lengthy opinion. Stone v. Franklin Insurance Co., 105 N. Y. 543, 12 N. E. 45.
In another case it was held that the agency acted as a broker and exercised some discretion in selecting the companies.
It was the agent of the insured. Dibble v. Northern Assur. Co., 70 Mich. 1, 37 N. W. 704, 14 Am. St. Rep. 470.
The following is directly in point: It is Unanswerable, we think.
Though a duly appointed agent of an insurance company must, as relates to that company, be regarded as the agent of the insurer, yet as to other companies, as in the case in hand (as to the Rocquet Company) in which he procures insurance for a property owner, he may be considered as the agent of the insured. Smith & Wallace Insurance Co. v. Prussian Mutual Insurance Co., 68 N. J. Law, 674, 54 Atl. 458.
In another decision it was held that one who was intrusted with keeping the property insured became the agent of the insured. Johnson v. North British Insurance Co., 66 Ohio St. 6, 63 N. E. 610.
An insurance agent, to whom a request for insurance is made, and who, acting as broker, procures all or part of such insurance through other agents of companies not represented by him, is the agent of the insured. Parrish v. Company, 140 Cal. 645, 74 Pac. 312.
Though, under special circumstances, a broker may be the agent of the insurer, it was decided the mere fact that he receives a commission from the insurer, for placing the insurance with him, does not change his character as agent of the insured. United Firemen’s Insurance Co. v. Thomas, 92 Fed. 127, 34 C. C. A. 240, 47 L. R. A. 450; East Texas Fire Insurance Co. v. Brown, 82 Tex. 631, 18 S. W. 713; Seamans v. Knapp-Stout & Co., 89 Wis. 171, 61 N. W. 757, 27 L. R. A. 362, 46 Am. St. Rep. 825; American Fire Insurance Co. v. Brooks, 83 Md. 822, 34 Atl. 373.
If the facts in the case in hand were different from that which they are in the cited cases, our conclusion would be different, for it is in great part a question of fact. The facts are as positive in favor of the position that the broker represents the insured as they are in the cited cases.
It is beyond question in this ease that the insured did not notify the companies before expressly named.
There was a contract of insurance between plaintiff and all of the insurance companies in which it was insured. It was not possible to put an end to it without regular cancellation made in accordance with the conditions and terms of the policy.
Learned counsel for plaintiff have cited two decisions on this point in which it was held that, no notice of cancellation having been given by the company, the rights of the insured were not affected by the attempt to cancel. The broker was not considered the agent of the insurer. Standard Leather Co. v. Northern Assurance Co. (C. C.) 156 Fed. 689; Grace v. American Insurance Co., 109 U. S. 282, 3 Sup. Ct. 207, 27 L. Ed. 932.
Nor was the broker considered the agent of the insured in the cited cases. As Roc-quet & Co. was not the agent, notice to it was no notice.
In the case next cited by plaintiff, to wit, Nabors v. Insurance Co., 51 South. 432, 125 La. 378, this court held that a company ought not to undertake to cancel a policy without notice to the insured or to a qualified agent.
That rule is equally as applicable to the insurer who should not undertake to cancel a, policy without notice to the insurance company or to one of its agents authorized to receive notice.
*39 Here we have seen that Roequet & Oo. was not authorized to receive notice.
Learned counsel for plaintiff invite our attention to the law of the state regulating insurance as sustaining their contention.
We will begin by stating that there is no evidence showing that the insurance companies paid Roequet & Co. a commission or any stipend for its services.
The local agents divide the commission among themselves. This is .a division of commission with which the insurance companies have naught to do.
The law in question (Act No. 105 of 1898) is directed against unauthorized agents and has for object the imposition of a penalty for acting as such. It prohibits the payment of brokerage, commission, or rebate to any but authorized agents, and it has for further object to regulate generally the insurance business.
The division of commission among agents is not an act of the company, nor is it an act for which a company not in the least concerned can be made to answer. No such penalty can be imposed upon company entirely innocent in matter of dividing commission among the agents.
■ For reasons stated, the rule nisi is recalled and discharged, applicant’s demand is rejected, and the petition dismissed.