HALL, Judge.
Delchamps Insurance Agency (Del-champs”) sued Calvin Diaz (“Diaz”) for $660.64 allegedly due as the earned premium on a policy of insurance. Delchamps prosecutes this appeal from a judgment rejecting its claim and dismissing its suit.
*326 ■ The facts as revealed by the record are as follows:
Delchámps is a surplus line insurance agency specializing in placing risks which normally are not readily accepted by insurance companies writing the particular type’of insurance to be placed. Delchamps was the local authorized agent of Fidelity General Insurance Company.
Diaz is in the cartage business and owns and operates a large fleet of trucks.
Carlton H. Pecot (“Pecot”) is a licensed insurance agent doing business under the name of Culver Insurance Agency. While Pecot is the local agent for certain insurance companies, he acts to a large extent as an insurance “broker” as that term is defined in LSA — R.S. 22:1162:
“§ 1162. Broker defined
An insurance broker is hereby defined to be an individual, partnership or corporation who or which shall, for a_ commission or brokerage consideration',' act for or aid in any manner in negotiating contracts of insurance, or in 'placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent. Amended and reenacted Acts 1958, No. 125.”
Pecot had for a number of years been doing' a considerable business with Del-champs, placing risks with Delchamps which were difficult to place for his clients •elsewhere, and maintained a running account with that agency. Delchamps charged Pecot with the premiums on policies brokered by Pecot with it. Delchamps never charged any of such premiums to the insured directly. Delchamps billed Pecot and Pecot in turn billed his clients for the premiums. Delchamps and Pecot shared ■the .commissions. In the case of the cancellation of any policy Delchamps credited Pecot’s ■ account with the amount of any return premiums and Pecot credited his own client’s account accordingly.
Diaz had been placing his Fleet Liability and Physical Damage Insurance through Pecot’s agency for a number of years. The policies had been placed by Pecot in the General Guaranty Insurance Company, a company with whom Delchamps had no connection. Sometime in the year 1964 General Guaranty gave Diaz notice of cancellation of the Fleet Policy issued by it, the cancellation to be effective April 20, 1964. Upon learning of the cancellation Pecot undertook to place the insurance with another insurance company. He ultimately contacted Delchamps who prepared and delivered to him a policy issued by Fidelity General Insurance Company bearing the effective date of April 19, 1964. The policy was delivered to Pecot on or about April 21 and he in turn took it to Diaz. Immediately upon examining the policy Diaz rejected it and handed it back to Pecot. Diaz testified that the reason he rejected it was that some of his trucks were misdescribed therein and further that the premium was too high.
Pecot verified the fact that Diaz rejected the policy and returned it to him. He testified that he immediately telephoned Del-champs and notified him of the rejection and further testified that he mailed the policy back to Delchamps the following day was a covering letter, carbon copy of which was identified by him and filed in evidence.
Delchamps denied being notified of the rejection and denied receipt of the letter and the policy.
Shortly after the rejection of the policy by Diaz to wit on April 28, 1964 Fidelity General Insurance Company gave notice to Diaz of its cancellation of the policy in question effective May 9, 1964. The reason for cancellation is not disclosed.
Upon issuing the policy Fidelity General Insurance Company charged Delchamps with the premium due for the policy year *327 commencing April 19, 1964. Delchamps in turn charged the amount of the premium to Pecot’s account. Upon cancellation of the policy on a pro-rata basis the insurance company credited the amount of the return premium to Delchamps’ account and Delchamps in turn credited the amount to Pecot’s account with it. This resulted in a net indebtedness by Delchamps to the company and by Pecot to Delchamps of $660.64, representing the earned premium on the policy from date of issuance to date of cancellation. Delchamps paid this amount to the company and after an unsuccessful attempt to collect it from Pecot, relieved him of his indebtedness, and is now attempting by this suit to collect the amount from Diaz.
Irrespective of whether Pecot returned the policy to Delchamps (the Trial Court did not find it necessary to determine this point) the record is clear to the effect that the policy was unacceptable to Diaz and that he rejected it promptly. In our opinion the primary question to be decided is whether a contract of insurance was ever created between Fidelity General Insurance Company and Diaz. The answer depends upon the authority given Pecot by Diaz. If -Pecot had blanket authority to procure insurance for Diaz and to agree to all the terms and conditions of the policy on behalf of Diaz the policy in question became a completed contract of insurance upon its delivery by Delchamps to Pecot. It is otherwise if he did not have such plenary authority.
The record shows that Pecot had general authority to place insurance for Diaz in companies selected by Pecot, but Diaz testified without contradiction that he always reserved the right to accept or reject the policies as to coverage and premium rates. His testimony is borne out by the fact that after cancellation of the policy by Fidelity General Insurance Company Pecot negotiated other policies through Delchamps which were offered tO' and rej ected by Diaz, and were cancelled “flat” by Delchamps without charge for premium.
Even if Pecot could be considered as having had authority to agree to the normal regulated premium rates for Fleet Insurance, it does not follow that he would have had authority to bind his client to the payment of premiums which, as in this case, were approximately '50% higher than the normal rate.
We are of the opinion that although Pecot had authority to negotiate with Del-champs for a policy he had no final authority over its acceptance, that right being reserved to Diaz. No proof was offered by Delchamps that Pecot by custom of the trade or otherwise was clothed with apparent authority to make a binding contract for Diaz, and the nature of business of placing surplus insurance risks where the coverage and premiums are a matter of much negotiation would indicate otherwise.
 We are of the further opinion that the policy issued by Delchamps was in effect an offer of insurance to Diaz which; being rejected by Diaz, never ripenéd into a contract of insurance. Pecot, being, as a broker, the agent for both parties, his knowledge of the rejection was imputed to Delchamps.
Appellant cites and relies heavily upon the opinion of the Supreme Court in Morris McGraw Wooden Ware Co., Limited v. German Fire Ins. Co. of Pittsburg, Pa., 126 La. 32, 52 So, 183, 38 L.R.A.,N.S., 614. The facts in that case are entirely dissimilar to the case at issue, and the -Supreme Court took pains to say:
“If the facts in the case at hand were different * * * our conclusion would be different, for it is in .great part a question of fact * *
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellant.
Affirmed.