202 So.2d 379 (1967)
TRINITY UNIVERSAL INSURANCE COMPANY
v.
William S. GOOD, Jr. and Donald E. Dahl.
No. 2691.
Court of Appeal of Louisiana, Fourth Circuit.
July 17, 1967.
Rehearing Denied October 4, 1967.
*380 Joseph H. Hurndon, New Orleans, for plaintiff-appellant.
Lucien J. Fourcade, New Orleans, for William S. Good, Jr., defendant-appellee.
George E. Konrad, New Orleans, for Donald E. Dahl, defendant-appellee.
Before REGAN, YARRUT and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit by Trinity Universal Insurance Company, a surety company hereinafter referred to as Trinity, for recovery against William S. Good, Jr., and Donald E. Dahl on a contract of indemnity signed and executed by Good and Dahl in favor of Trinity on May 19, 1958. By the terms of the third party indemnity agreement, Good and Dahl, as indemnitors, obligated themselves "jointly and severally" for the issuance by Trinity of a bond or bonds on behalf of Don dahl Associates, Inc., as principal. Paragraph 2 of the indemnity agreement provides in part as follows:
"To indemnify the Company [Trinity] from and against any and all liability, loss, costs, damages, attorneys' fees and expenses of whatever kind or nature which the Company may sustain or incur by reason or in consequence of executing any such bond or bonds as surety or co-surety * * *."
Trinity alleges that it did execute certain lien bonds pursuant to that agreement as surety for Don Dahl Associates, Inc., in connection with the building of certain residences on Lynhuber Drive in the City of New Orleans. Thereafter, a claim was made against Trinity for the failure of Don Dahl Associates, Inc., to pay certain accounts alleged due and owing to the plumbing subcontractor for labor and materials furnished in construction of the houses on Lynhuber Drive. Suit was filed by Henry E. Johnson Plumbing and Heating, Inc., against Don Dahl, individually; Don Dahl Associates, Inc.; Trinity Universal Insurance Bonding Company, Inc.; and Robert V. Fuchs,[1] bearing docket No. 375-895 on the docket of the Civil District Court for the Parish of Orleans. A judgment was entered in that case against Dahl, individually, Dahl Associates, Inc., and Trinity in solido in favor of plaintiff Johnson Plumbing Company in the sum of $6,750.
*381 Fuchs was not included in the judgment. The judgment was entered by "stipulation" on March 16, 1961, and signed and filed and made executory on June 15, 1961. On September 15, 1961, Trinity paid the judgment creditor (Johnson) the sum of $7,065.60 upon execution of the following release:

"RELEASE AND ASSIGNMENT OF JUDGMENT
"Received of Trinity Universal Insurance Company of Dallas, Texas, the sum of $7,065.60 in full, final and complete settlement of all claims, demands, actions and causes of action, which the undersigned has or may have against Trinity Universal Insurance Company under and by virtue of that certain judgment in favor of the undersigned rendered on March 16, 1961, and signed on June 15, 1961, in proceedings No. 375-895 of the Docket of the Civil District Court for the Parish of Orleans, State of Louisiana, entitled `Henry E. Johnson Plumbing and Heating, Inc. versus Don Dahl, Individually, Don Dahl Associates, Inc., Trinity Universal Insurance Bonding Company, Inc., and Robert V. Fuchs', and by virtue of the payment herein received and acknowledged the undersigned gives Trinity Universal Insurance Company full and complete acquittance, satisfaction and discharge for any and all claims, demands, actions and causes of action arising out of or in anywise connected with said cause of action.
WITNESSES:
[Signed] Cheryl Luke
[Signed] Christine Remel
"And, the undersigned in consideration for the sum herein received and receipted for does by these presents sell, assign, set over, abandon and deliver unto Trinity Universal Insurance Company all of its rights, title and interest in and to said judgment in favor of the undersigned in the aforesaid proceedings and grants unto Trinity Universal Insurance Company full subrogation to all of the rights, title and interest of the undersigned against all of the remaining defendants in said suit against whom, said judgment shall remain in full force and effect; and the undersigned hereby authorizes and empowers Trinity Universal Insurance Company to proceed in its own name, or in the name of the undersigned, against the remaining defendants in said suit to exercise all the rights conferred upon the undersigned in said judgment, including, but not limited to the foreclosure and execution thereon.
"IN WITNESS WHEREOF, the undersigned has caused its signature and seal to be hereto affixed this 15th day of September, 1961, in the presence of the two undersigned competent witnesses.
HENRY E. JOHNSON PLUMBING AND HEATING, INC.
by [Signed] Louis A. Di Rosa
Vice-Pres."
On February 25, 1964, Trinity filed this suit against Good and Dahl seeking judgment in solido in the sum of $7,065.60, plus interest and attorney's fees. The third party indemnity agreement executed by them in favor of Trinity on May 19, 1958, was the basis of the action. From a judgment in favor of both defendants and dismissing Trinity's suit, Trinity has appealed.
Dahl operated a contracting business under the corporate name of Don Dahl Associates, Inc. He apparently had a poor *382 credit rating and was unable to secure the required lien bonds to build houses on seven lots he had purchased on Lynhuber Drive. Several applications for lien bonds from local bonding agents were unavailing. Dahl then by chance met and became acquainted with Maily David, who at that time was an independent insurance broker. David offered his services in procuring the required lien bond to build a house on one of the lots.
David made an application for a lien bond through Meyers, Whitty & Hodge, Inc., a general insurance and bonding agency. This agency, upon checking the credit rating of Dahl, declined to issue the bond unless secured by a financially responsible third party indemnitor. The name of William S. Good, Jr., was suggested by David. David was then furnished a blank general indemnity form of Trinity for Good to sign. Dahl prevailed upon Good to sign the third party indemnity agreement, which he, Dahl, also signed. The execution of the bond took place at Good's office and was witnessed by David. It was returned in proper form to the Meyers, Whitty & Hodge agency; and a lien bond was executed by them as agents for Trinity, covering the building of a single house on a certain lot. The building was completed and the house was sold without incident.
Thereafter, a second general indemnity agreement form was signed by Good in the same manner. Another lien bond was executed by the agency and the second house was built without incident. Good, upon signing the second indemnity agreement, informed Dahl that he would sign no more. David then obtained a third general third party indemnity agreement from Ervin B. Breazeale. Dahl did not sign the second or the third indemnity agreement.
From these circumstances there appears to be little doubt that Good and Dahl thought the indemnity agreement signed on May 19, 1958, was a bond for a specific building project. Likewise, they thought the second one, signed only by Good, was a bond limited to the second building. Apparently they did not take the trouble to read the instrument, which reads in part as follows:
"And Whereas, the indemnitors have a substantial, material and beneficial interest in the obtaining of the said bond or bonds,
"Now Therefore, in consideration of the premises and the sum of One Dollar ($1.00) this day paid by the Company to each of the indemnitors, receipt of which is hereby acknowledged, the indemnitors, and each of them, for themselves, their and each of their heirs, executors, administrators, successors and assigns, jointly and severally, do hereby covenant and agree:
"1. To pay, or cause to be paid, the premium or premiums for said bond or bonds in strict accordance with the terms of the application, a copy of which is, or may be, hereto attached as a part of this instrument, or of any other agreement made, or that may be made, between the principal and the Company or the surety or sureties executing such bond or bonds.

* * * * * *
"18. This agreement of indemnity is a continuing obligation and shall remain in full force and effect and be applicable to any and all bonds which the Company may hereafter execute at any time on behalf of said principal in connection with any other contract or obligation of any kind or character whatsoever which said principal may undertake in the future, and may only be terminated by written notice sent by registered mail to the Company at its office at Dallas, Texas, evidencing the intention of the undersigned to terminate this agreement."
We have only the testimony of Good and Dahl touching upon their relations with David and the representations made to them by him. David half left the area and his whereabouts was unknown at the time *383 of trial. Nevertheless, any representations made by David to the contrary could not contradict the foregoing clearly expressed provisions.
James P. Johnson, vice-president of Meyers, Whitty & Hodge, Inc., is in charge of its surety and fidelity bonding department. He testified that it was unusual for more than one general third party indemnity agreement to be executed by the same party, but when Breazeale's indemnity agreement was presented, David explained that Breazeale was involved with Dahl in the building enterprise and was being offered as indemnitor.[2] This was accepted for whatever additional security value it might have. Johnson's agency was not informed by anyone that Breazeale was being substituted for Good or that Good no longer wished to be obligated. Good could have terminated his obligation by giving the written notice stipulated in the agreement, but he did not do so.
Johnson also testified that the general indemnity form used could have been restricted by the insertion of appropriate words, but a specific indemnity agreement form is generally used in such cases. He said that when David applied to his agency he expressed interest in a specific contract, but David also stated that Dahl had plans to build a number of houses. Johnson's company was not interested in single small projects, and the use of the general indemnity agreement was preferred so as to cover other projects contemplated without the necessity of securing successive specific indemnity agreements.
There is no evidence in the record to indicate that Maily David was an agent of Trinity or an employee of Meyers, Whitty & Hodge, Inc. This was the first and only contact he had with the agency, a factual circumstance which distinguishes his relationship from that of the broker (Frazier) with the agency (Gibson) in Mathews v. Marquette Casualty Company, 152 So.2d 577 (La.App. 2d Cir. 1963). David was an independent insurance broker and was the agent of Dahl. Morris McGraw Wooden Ware Co. v. German Fire Ins. Co., 126 La. 32, 52 So. 183, 38 L.R.A., N.S., 614 (1910); 44 C.J.S. Insurance § 140. No representations made by David are binding on Trinity. David Moore Development Co. v. Higgins Industries Inc., 163 So.2d 139 (La.App. 4th Cir. 1964); Molero v. California Company, 145 So.2d 602 (La.App. 4th Cir. 1962).
As indicated above, we think both Good and Dahl were unaware of the full import of the general third party indemnity agreement executed by them. They probably did not realize they were signing a continuing general indemnity agreement, but their error resulted in no measure from any fault or misrepresentation of Trinity or its agent, Meyers, Whitty & Hodge, Inc. There is nothing ambiguous in the agreement, and it must be assumed that they knew its contents. Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728 (1925); St. Landry Loan Company v. Avie, 147 So.2d 725 (La.App. 3d Cir. 1962). Trinity acted in good faith in relying on the indemnity agreement which was presented to it in proper form. They were without any notice of misrepresentation, misunderstanding, or private agreement between the indemnitors and David of any limitations.
The testimony reveals that defendant Good was a man of many years' business experience in executive capacities. He had been involved in real estate and subdivision developments, and was president of Gentilly Land and Development Corporation. It is reasonable to assume that a man of his knowledge and experience would not sign an indemnity agreement without knowing its contents, or would seek advice of counsel if he did not fully *384 understand. He is a responsible person and must be held accountable accordingly. If a loss is to be suffered because of his misunderstanding, it must be borne by him who caused it and not by the innocent party who acted in good faith in reliance upon his act. Clark-Kelley Livestock Auction Co. v. Pioneer Bank & Trust Co., 228 La. 224, 81 So.2d 869 (1955); Ideal Savings & Homestead Ass'n v. Kerner, 208 La. 513, 23 So.2d 200 (1945); Travelers Ins. Co. v. United States Fidelity & Guaranty Co., 168 So.2d 439 (La.App. 3d Cir. 1964).
During the course of the trial below, exceptions of no right or cause of action were filed on behalf of Good and Dahl, and additionally, an exception of res judicata was filed on behalf of defendant Dahl. The judgment of the trial court dismissed plaintiff's suit against Dahl "* * * on his exception of res judicata and exception of no cause or right of action dictated into the record * * *." The suit was simply dismissed as to defendant Good without expressed reasons.
The exception of no cause or right of action urged on behalf of defendant Good is based on the contention that he was not timely notified of the filing of the suit by Johnson Plumbing and Heating Company. Good argues that he had no knowledge of his alleged liability under the indemnity agreement in question until receipt of a letter from Trinity, dated January 31, 1961. He contends that if he had been timely notified he might then have been able to produce Maily David upon whose alleged representations he relied.
Trinity might have cited Good and Dahl as third party defendants when the Johnson suit (No. 375-895) was filed, but its failure to do so does not prejudice its rights against them in this suit, unless it should be proved that the defendants had means of defeating the action which has since been lost. LSA-C.C.P. art. 1113. Good has failed to make this proof. We have stated above our belief that Good and Dahl might have misunderstood the meaning of the indemnity agreement. Even assuming that such error resulted from a misrepresentation or even fraud of David, such fact could not effect their liability to Trinity, who was in no wise responsible for the acts of David, and independent insurance broker and agent of Dahl.
The second reason argued by Good in support of the exception is that Trinity, after its purchase of the Johnson judgment has not attempted execution or exhausted its efforts for collection against Dahl, individually, Dahl Associates, Inc., and Robert V. Fuchs. This contention is no more than an untimely attempt to plead discussion. Discussion may be pleaded by dilatory exception, but must be pleaded prior to answer or judgment by default. LSA-C.C.P. arts. 926, 928. The exception raising this contention was not pleaded until the trial was nearing conclusion. Attention also should be given to LSA-C.C.P. art. 5152 which reads as follows:
"When a surety is sued by the creditor on the suretyship obligation, the surety may plead discussion to compel the creditor to obtain and execute a judgment against the principal before executing a judgment against the surety.
Discussion may not be pleaded by a surety who is obligated solidarily with the principal, or who has renounced the benefit of discussion." (Emphasis added.)
Therefore, Good's right to plead discussion was lost because it was not timely filed, and it will not serve as a basis for support of the exception of no right or cause of action.
Finally, Good points to clause 4 of the indemnity agreement which reads in part as follows:
"That the surety or sureties executing any such bond or bonds shall have the *385 right, and such surety or sureties are hereby authorized, but not required

* * * * * *
"f. To adjust, settle or compromise any claim, demand, suit or judgment upon any such bond or bonds, unless the indemnitors shall request such surety or sureties to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall, simultaneously with such request, deposit with such surety or sureties collateral satisfactory to it or them, sufficient to pay judgment or judgments rendered, or that may be rendered, with interest, costs, expenses and attorneys' fees." (Emphasis added.)
Good argues that the judgment in suit No. 375-895, which is the basis of this suit against Good, was entered by stipulation without his knowledge and without his having been afforded the opportunity provided in clause 4(f) to request litigation of the claims and appeal therefrom.
This argument is without merit, since by Good's own letter exhibit he has established that he was notified January 31, 1961, some six weeks before entry of the judgment. He had ample time to make an appearance in the case, or take such other action as might have been appropriate under clause 4(f).
For whatever reasons the court below dismissed plaintiff's suit against Good, we must hold it in error.
The defendant Dahl, in support of his exceptions of no right or cause of action and res judicata, argues that since Trinity has "purchased" the original judgment and become the transferee and owner thereof with full subrogation to all the rights of the original plaintiff in that suit, it now stands in the shoes of that plaintiff as against all the other defendants. On this basis he urges res judicata, citing LSA-C. C. art. 2286. This contention is without merit. Whereas the cause of action upon which the present suit rests is the general indemnity agreement of May 19, 1958, the cause of action on which the first suit was filed and judgment rendered was an account for labor and materials furnished by the subcontractor. Furthermore, the demand of the present suit is for a different suma sum which includes also the demand for attorney's fees as provided by the terms of the indemnity agreement.
Dahl has urged no additional reasons in support of the exception of no right or cause of action, except, as urged by Good, that Trinity did not first seek execution of the judgment against the other judgment debtor or defendant Fuchs. For reasons stated above, this argument is without merit.
Defendant Dahl argues that since Trinity already has a judgment against him, by reason of the purchase and assignment referred to, a judgment against him in this suit would result in a duplication of judgments.
Trinity concedes in its brief that, under LSA-C.C. art. 2161(3), it became subrogated to plaintiff's rights (in suit No. 375-895) and acquired rights against Dahl. It suggests that Dahl, at most, can claim an extinguishment by confusion only to the extent of its (Trinity's) pro rata share of the judgment against them in solido.
Whether or not the judgment in suit No. 375-895 has been extinguished in part or satisfied in full, precluding an execution thereof, and whether the defendant Fuchs (who was not cast) remains subject to being cast in judgment, are questions which cannot and need not be determined in this proceeding. Suffice it to say, that nothing herein shall be construed as denying to Dahl, or the other defendants in suit No. 375-895, any right they may have to claim cancellation or payment of the original judgment. In no way is this judgment to create duplicate claims or rights of Trinity against Dahl. Furthermore, any rights Good may have in subrogation against Dahl, his co-obligor *386 under the indemnity agreement, or against Don Dahl Associates, Inc., the principal debtor, are expressly reserved to him.
By the terms of the third party indemnity agreement, the indemnitors obligated themselves for the payment of attorney's fees, which might be sustained by Trinity as a consequence of executing any bond or bonds. Since the agreement merely stipulates the obligation for payment of attorney's fees without fixing the amount thereof, the amount should be reasonable, within the court's discretion.
Plaintiff seeks recovery of attorney's fees in an amount equal to one-third of the amount of its recovery. The only testimony in the record relating to the reasonableness of attorney's fees in cases of this kind is that of Louis Di Rosa, the attorney who represented Johnson Plumbing and Heating Company in the original suit. After testifying on matters relating to that suit and the payment by and the assignment of the judgment to Trinity, he was offered by Trinity as an expert on the question of attorney's fees. He testified, without objection or contradiction, that a fee of one-third of the amount of recovery would be reasonable and in keeping with the custom among lawyers in this community. It is our opinion that an allowance of one-third would be an abuse of discretion, notwithstanding the uncontradicted testimony of Mr. Di Rosa. Considering the issues involved and the extent of the record before us, we will fix the attorney's fees at $1,500 which is slightly in excess of 20 percent of the amount of recovery.
The judgment appealed from in favor of defendants William S. Good, Jr., and Donald E. Dahl against plaintiff Trinity Universal Insurance Company, dismissing plaintiff's suit at its cost, is reversed. Judgment is now rendered in favor of Trinity Universal Insurance Company against William S. Good, Jr., and Donald E. Dahl, in solido, in the sum of $7,065.60, plus $1,500 as attorney's fees, with legal interest thereon from date of judicial demand. Defendants are to pay all costs of these proceedings.
Reversed and judgment rendered.
NOTES
[1] Robert V. Fuchs was the alleged owner of one of the five houses in question. One house was alleged to be owned by Don Dahl Associates, Inc., and the other three by Don Dahl individually.
[2] Good testified that Breazeale was involved with him in the development of Lynhuber Subdivision.