285 So.2d 813 (1973)
B. J. TINER et al., Plaintiffs-Appellees,
v.
AETNA LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 12075.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1973.
On Rehearing October 10, 1973.
Writ Granted November 21, 1973.
*814 Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for defendant-appellant.
Pugh & Nelson by Sydney B. Nelson, Shreveport, for plaintiffs-appellees.
Before AYRES, BOLIN and HEARD, JJ.
BOLIN, Judge.
Betty Jane Tiner, joined by her husband, brought this action to enforce the provisions of a health and accident policy issued by Aetna Life Insurance Company to plaintiff. Defendant company filed an answer, in which it denied coverage, and reconvened, affirmatively pleading that certain fraudulent and material misrepresentations were made in the application for its policy; that if the truth had been known to Aetna it would have refused to issue the policy. Defendant tendered $300.21 as return of premiums collected under the policy and also asked for judgment against plaintiffs, as defendants in reconvention, for a return of $157.95 which it had previously paid plaintiffs on an uncontested claim. After trial the district judge, without assigning written reasons, rendered judgment in favor of Betty Jane Tiner for $790.11, and defendant appeals. We affirm the judgment.
At the outset of the trial it was stipulated the various documents, including the policy, the application form, reports from doctors and from the Shreveport Mental Health Center would be admitted without dispute; further, that the amount due, should the court find for plaintiffs, would be $790.11. The remaining questions concerned coverage, i. e., whether there was a fraudulent statement or misrepresentation of the facts in the application, imputable to plaintiffs, which would render the policy void; or, if misrepresentations were made by the person who sold the policy, was such person the agent of the insured or the insurer?
The policy was purchased by E. R. Tiner for his daughter prior to her marriage. Appellant's position is that the policy was issued in error in reliance upon material misrepresentations of Mr. Tiner in answering questions relative to his daughter's medical history, previous psychiatric treatments and hospitalization for emotional disturbances. Appellant contends further that A. J. Abramson, who sold the policy, was a broker and not an Aetna agent; therefore, if truthful responses to questions in the application were given to Abramson and he falsely entered the answers, the insured is bound by such misstatements since Abramson was acting as agent for the insured and not as agent for Aetna. Alternatively, it is urged plaintiff, by accepting the policy with due notice that the application was attached and made a part of the policy, is charged with knowledge of and is bound by misrepresentations inserted therein.
Betty Jane, who was not present when the application was filled out, later signed the application and the Tiners paid premiums, which were received by Aetna without *815 complaint over a period of 21 months before the present controversy arose. Appellees contend the questions were answered truthfully; that the Tiners thought they were dealing with an agent of Aetna; and they relied upon him to fill out the application correctly.
Mr. Tiner testified he called Abramson and asked him to come to his home for the purpose of discussing the purchase of a health policy for his daughter; that he had been referred to Abramson whom he thought represented Aetna; that when Abramson arrived he had with him an Aetna application form and rate book and advised him he could write an individual health and accident policy on Tiner's daughter with Aetna; that Abramson asked certain questions which he, Tiner, answered truthfully and Abramson entered the answers on the application form. From the evidence it appears that in the normal course of business such completed application forms are taken by the broker or agent to the insurer which in turn submits the applications to the underwriting department. If the policy is to be issued it, together with the application form, is sent back to the person making the application to be signed. A request for payment of premium accompanies the policy.
Abramson testified he was and had been a licensed agent for Equitable Life Insurance Company for thirteen years; that he acted as broker for Aetna as well as a number of other companies; that on the day Tiner called his company office the cashier took the call and gave it to him. He went to the Tiner home that evening and when Tiner told him he wanted some health insurance for his daughter, Abramson advised him that Equitable did not write individual policies but that he could write or "broker" it with Aetna. When asked by Aetna's attorney what he meant by "broker" he stated he was representing Aetna but that his client was Tiner. Questioned if there was any difference in the way a policy application submitted by a full-time Aetna agent was processed and a policy application submitted by a broker, he replied there was none; that both were submitted through a local office to the company's underwriting department; that agents and brokers use identical rate books and receive the same rate of commission, i. e., 35% of the first year's premium.
The controversial question, answered in the application, was as follows:
"13. Has any person to be covered: Yes No
* * * * * *
 (c) ever had any mental,
 nervous, physical,
 or functional disorder
 or impairment? X"
To the above question (13-c) Mr. and Mrs. Tiner testified they answered "yes". Further they testified they answered all questions asked them by Abramson truthfully and that they told him of the prior medical treatment received by their daughter. Abramson admitted that the Tiners answered "yes" to the question but that they minimized the severity of the emotional disturbance and he subsequently circled or marked through the "X" in the "yes" block and placed an "X" in the "no" block.
The record established that the insured, Betty Jane Tiner, had been treated on a weekly out-patient basis at the Shreveport Mental Health Center over a period of approximately one year prior to the issuance of the policy in March, 1970. However, there is no documentary record of hospital treatment for psychiatric disturbance before June 1, 1971, over a year after the policy was issued. It is true Mr. Tiner stated his daughter had been treated by a psychiatrist before issuance of the policy but, initially, on cross-examination he had stated he did not recall the time definitely. [The two claims for which this suit was brought were for illnesses unconnected with mental illness.]
From our review of the record, including the records from the Shreveport Mental *816 Health Center, Schumpert Hospital and Dr. Andrew J. Mullen, we are convinced that Betty Jane Tiner had been emotionally disturbed and had been treated by the psychiatrist at the Mental Health Center prior to March 3, 1970, the effective date of the policy. However, even though the testimony is somewhat conflicting, we believe there was no material misrepresentation made by the Tiners to Abramson and that if the answer to question 13-c was incorrect it was due to Abramson's actions in crossing out the "yes" answer to the question and inserting "no".
Appellant urges that Abramson was not an agent of Aetna and that insofar as Aetna is concerned he is a broker. It is admitted that if Abramson had been employed by Aetna as a licensed agent it would have been responsible for the alleged misrepresentation if the Tiners had made a full disclosure of Betty Jane's medical history. Appellant argues that Abramson, being a broker, is the agent of the insured and the insured is thus responsible for any misrepresentations in the application which Abramson inserted. Support for this contention is said to be found in the statutory definitions of "broker", "solicitor", and "agent" found in the Louisiana Insurance Code, Revised Statutes 22:1161, 1162 and 1163.
Broker is defined in 22:1162:
"An insurance broker is hereby defined to be an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent."
This definition has been interpreted rarely, and then in cases involving the placing of insurance for companies which have actually employed the broker to place risks with one or more companies. So far as we have been able to determine there are no cases interpreting the statute as precluding a broker from being an agent of the insurer.
Mathews v. Marquette Casualty Co. (La.App.2d Cir. 1963, cert. refused), 152 So.2d 577, involved the question of whether notice to the broker was notice to the insurer, which denied that the broker was its agent and therefore contended it had no notice of information conveyed by the insured to such broker. The court held the broker was also the agent of the insurer and as such, notice to him was notice to the company. During the course of the opinion the court interpreted Louisiana Revised Statutes 22:1161, 1162 and 1163 in the following manner:
"These statutes do not exclude other insurance relationships. That is, these regulatory insurance statutes do not prevent the courts from finding that an agency relationship exists in fact, outside the scope of the statutes. As was said in Granite State Fire Insurance Company v. Mitton, D.C.Colo., 98 F.Supp. 706, 710 (1951):
"`* * * statutes regarding licensing and defining an agent are not intended to change or exclude the general laws of agency. They do not destroy the power of the courts to infer an agency relation from the conduct of the parties. [Cited cases omitted]'
"In Couch on Insurance 2d, Vol. 3, § 26:25, the following summary appears:
"`In the absence of conflicting statutory or charter restrictions, an agency for an insurance company may be created by implication, it being unnecessary to show that authority was conferred by resolution of a board of directors or other authorized body. Thus, if one purporting to act as agent receives an application, accepts the premium, secures and delivers the policy, and does everything necessary *817 to attachment of the risk, the insured may assume that he is the properly authorized agent of the insurer.
"`An implication of authority arises from the fact that the insurance company has furnished an agent with policy forms, and by the insurer's act in sending a policy to a person for delivery to the insured.
"`An agency may be implied from recognition or acquiescence of the insurer as to acts previously done in its behalf, especially if similar acts repeatedly have been permitted. An insurance company by the repeated acceptance of applications taken by the agent of another company, placing his name on the policies issued and on identification cards, makes him its agent. Where a broker holds himself out as a general agent, solicits a policy, collects a premium a part of which he retains as his commission according to his custom, and a policy is issued upon information procured by him, he is an agent of the insurer by implication as to the insured who, in good faith, dealt with him as such.'"
We conclude Abramson was the agent of the insurer and thus Aetna is bound by his failure properly to complete the application. We do not hold that in all cases the insurer is liable or responsible for the actions of a broker. We do hold that under the facts of this case the broker, Abramson, being cloaked by Aetna with all the indicia and the authority of an agent or solicitor and not being employed by the insured, was in fact an agent of the insurer.
Finally, appellant shows that attached to the policy, which was delivered to the insured (or her parents), was a copy of the application and a notice to the policy holder to read the copy. This notice reads in part:
"Your application has now become a part of the policy contract which was issued on the basis that the information given in your answers to all questions shown on the application is correct and complete."
It is contended the above constitutes constructive notice and binds the insured for misstatements appearing in the application.
We think the record clearly establishes that no copy of the application was left with the Tiners at the time it was completed by Abramson nor did Betty Jane read the application form. Furthermore, assuming the notice on the policy should have alerted the Tiners to the fact the application had become a part of the policy, we find that the manner in which the answer to 13-c was inserted was so ambiguous that examination would not have put them on notice it was "incomplete" or "incorrect" so as to bind them for misstatements in the application.
For the reasons assigned the judgment is affirmed at appellant's cost.
AYRES, J., dissents and assigns written reasons.
AYRES, Judge (dissenting):
The record clearly establishes, in my humble opinion, that the insurance policy upon which plaintiffs' demands are predicated was procured through material and false representations with respect to the insured's previous state and condition of health, with particular reference to her mental infirmities. That fact is abundantly established by the testimony of the insured's mother and father who testified, notwithstanding that answers to questions in the application were to the contrary. They testified that the insured, their daughter, was afflicted with a mental, nervous, physical, or functional disorder or impairment and had been so afflicted long before this insurance was applied for, and that on numerous occasions she had been hospitalized and received psychiatric treatment. For instance, the insured's father *818 testified (in the course of the following questioning):
"Q. Mr. Tiner, in Mr. Abramson's testimony he indicated that after you initially told him that . . . that he asked you whether your daughter had ever seen a doctor for psychiatric treatment, and that you said she had not. Is that correct, sir?
A. That is not correct. She had seen several doctors.
Q. Did you advise him so?
A. That is right.
Q. Mr. Abramson also testified that he asked you . . . whether or not your daughter had ever been hospitalized for emotional or mental disorder and that you said she had not?
A. That is not right.
Q. What did you advise him?
A. She had been.
Q. You so advised him?
A. That is right.
In response to questioning, the insured's mother gave similar testimony:
Q. Mrs. Tiner, in questioning Mr. Abramson, he indicated that after asking you and your husband whether or not your daughter had ever been treated for nervous and mental disorder and he said yes originally, that he asked whether or not your daughter had ever seen a doctor for mental disorder and that your husband said that she had not. Did that occur?
A. He asked that question but it was not answered in that manner.
Q. How was it answered?
A. My husband said she had had extensive psychiatric help.
Q. Mr. Abramson testified that he asked you and your husband whether or not your daughter had ever been hospitalized for mental or nervous disorder and that either you or your husband answered that she had not. Did that occur?
A. No.
Q. What occurred?
A. We told him that she had had. My husband did the answering, but I was listening, and he said that she had had.
Thus, through their testimony, the insured's mother and father disclosed that their daughter's condition of health was of long standing, that she had previously suffered mental illness, and, moreover, as already noted, that she had been hospitalized and treated therefor prior to the preparation of the application for insurance.
In this connection and of primary concern is the status of Abramson, who took plaintiff's insurance application. If he was defendant's agent, then his knowledge is imputable to the defendant, but, if he was not defendant's agent but a broker, whatever information he had as to plaintiff's prior condition of health is not imputable to the defendant.
Under the facts of this case, in accordance with LSA-R.S. 22:1162 and the jurisprudence, Abramson was, in my opinion, a broker and not an agent of defendant.
Morris McGraw Wooden Ware Co. v. German Fire Ins. Co., 126 La. 32, 52 So. 183, 184-185 (1910), and the authorities therein cited;
Delchamps Insurance Company v. Diaz, 178 So.2d 325, 327 (La.App., 4th Cir. 1965);
Trinity Universal Insurance Company v. Good, 202 So.2d 379, 383 (La.App., 4th Cir. 1967);
Security Transfer Co. v. Insured Lloyds Co., 225 So.2d 284, 287 (La.App., 4th Cir. 1969).
*819 The important question presented in the Morris McGraw case, supra, was whether Rocquet & Co., an insurance agency, was the agent of several defendants, including German Fire Insurance Company, or a broker. There the Supreme Court, in reviewing the jurisprudence, made these observations:
"We have not found it possible to agree with the theory that the agency of Rocquet & Co. was the agent of these companies, nor have we succeeded in finding that the policies had been canceled, although, as before stated, Rocquet & Co. had been ordered to cancel these policies.
"These companies, we have noted, had local agents of their own who were authorized to act for them. Rocquet & Co. were not authorized to act for them.
"Rocquet & Co. did that which other agents do frequently. It applied to other local agents for policies in order to assist it (Rocquet & Co.) in carrying the large amount of its insurance for McGraw & Co.
"The local agents applied to, obtained the policies, and delivered them to Rocquet & Co., as is the custom.
"The evidence shows that it is the custom, whenever insurance is effected by one agency through another agency, these agencies divide commissions.
"The insurance companies deal directly with their respective agents. They do not recognize as their agents the agents of other companies who have entered into an agreement with their agents. We understand that each company mails its policies to its own local agent, who in some instances delivers them to the local agents of another company in case of insurance made as above mentioned by the agent of another company. The accounting is made by each agent with the company he represents. He is charged with the policies, and not the agent through whom the policies are delivered to the insured.
"One of the propositions of plaintiff through learned counsel is that the intermediary between an insurance company and a person seeking insurance is the agent of the applicant in procuring the policy, but after the policy has been issued he ceases to be the agent of the assured and becomes the agent of the insurance company for completing the contract, by delivery of the policy and collection of the premium.
"We have found no authority to sustain the position.
"There is precedent for holding that the local agency was the agent of the insured; to be explicit, that in those instances Rocquet & Co. were the agents of the insured. It looked after the plaintiff's insurance business, as before stated.
"In a case wherein the facts were somewhat similar, that conclusion was arrived at in a lengthy opinion. Stone v. Franklin Insurance Co., 105 N.Y. 543, 12 N.E. 45.
"In another case it was held that the agency acted as a broker and exercised some discretion in selecting the companies.
"It was the agent of the insured. Dibble v. Northern Assur. Co., 70 Mich. 1, 37 N.W. 704, 14 Am.St.Rep. 470.
"The following is directly in point: It is unanswerable, we think.
"Though a duly appointed agent of an insurance company must, as relates to that company, be regarded as the agent of the insurer, yet as to other companies, as in the case in hand (as to the Rocquet Company) in which he procures insurance for a property owner, he may be considered as the agent of the insured. Smith & Wallace Insurance Co. v. Prussian National Insurance Co., 68 N.J.Law, 674, 54 Atl. 458.

*820 "In another decision it was held that one who was intrusted with keeping the property insured became the agent of the insured. Johnson v. North British Insurance Co., 66 Ohio St. 6, 63 N.E. 610.
"An insurance agent, to whom a request for insurance is made, and who, acting as broker, procures all or part of such insurance through other agents of companies not represented by him, is the agent of the insured. Parrish v. Company, 140 Cal.635, 74 Pac. 312.
"Though, under special circumstances, a broker may be the agent of the insurer, it was decided the mere fact that he receives a commission from the insurer, for placing the insurance with him, does not change his character as agent of the insured. United Firemen's Insurance Co. v. Thomas, 92 Fed. 127, 34 C.C.A. 240, 47 L.R.A. 450; East Texas Fire Insurance Co. v. Brown, 82 Tex. 631, 18 S.W. 713; Seamans v. Knapp-Stout & Co., 89 Wis. 171, 61 N.W. 757, 27 L.R.A. 362, 46 Am.St.Rep. 825; American Fire Insurance Co. v. Brooks, 83 Md. 22, 34 Atl. 373." (Emphasis supplied.)
Therefore, whatever information as to the insured's prior state of health, imparted to Abramson at the time of the preparation of plaintiff's application, was not imputable to defendant, Aetna. I find nothing in Mathews v. Marquette Casualty Company, 152 So.2d 577 (La.App., 2d Cir. 1963cert. refused) that modifies the rules well established in the jurisprudence of this State as exemplified in the Morris McGraw and subsequent cases.
The fact that the claims made may not have involved mental illnesses is of no moment or importance. Defendant was, however, informed during its review and consideration of plaintiff's claims that she had suffered prior mental illnesses notwithstanding her answers to questions in the application to the contrary. Thus, upon investigating and ascertaining the truth of the situation, defendant determined that the questions pertaining to those illnesses were answered falsely. The facts support the correctness of defendant's conclusions as well as the further fact that Abramson was not its agent. He was in the employ of Equitable as its agent and was only called to procure this insurance for plaintiff which could have been secured by Abramson from several companies for which he acted on occasions as broker.
The policy should, in my opinion, be annulled and declared of no effect. I, therefore, respectfully dissent.
Before AYRES, BOLIN, PRICE, HALL and WILLIAMS, JJ.

ON REHEARING
PRICE, Judge.
The application for rehearing contains a number of specifications of error alleged to have been committed by the court in the original opinion. The principal complaint is in regard to our holding that under the particular facts involved in this case Abramson was an agent (by implication) of the insurer and not solely a broker employed by Tiner to procure insurance for his daughter.
Appellant's argument in this respect tracks substantially the reasons advanced and cases relied on in the dissent to the original majority opinion. We have carefully examined these cases and find that the factual situation involved in each is readily distinguishable from the circumstances presented herein. In each of the cited cases the evidence clearly showed an employment by the insured of the broker to act as his agent to place coverage of insurance for his advantage.
We think the discussion of implied agency by Couch on Insurance 2d, Vol. 3, Section 26:25 quoted in Mathews v. Marquette Casualty Co., 152 So.2d 577 (La. App.2d Cir. 1963), and relied upon in our original majority opinion, is very persuasive *821 and the facts of this case fall within the criteria suggested as necessary by this authority for finding an implied agenc relationship.
Although the rehearing granted was not restricted, we primarily agreed to reconsider this matter because of the concern expressed by counsel for appellant that our original decision might destroy the bona fide brokerage concept in the insurance field. We believe counsel's concern in this regard is unjustified. Our holding in this case is limited to the factual situation presented herein and does not intend to change or modify the prior jurisprudential rules as set forth in the cases relied on by appellant (and cited in the dissenting opinion) which involved circumstances clearly establishing an "insured employed broker" relationship.
The other specifications are adequately disposed of in our original opinion and we do not find it necessary to comment on them further.
For the reasons stated, our former decree is reinstated and made the final judgment of this court.
AYRES, Judge (dissenting):
Knowledge of one procuring insurance for another who is not an agent of the insurer is not imputed to the insurer. There is, in my opinion, no evidence nor fact or circumstance in this record upon which it could be legally concluded that Abramson, procurer of the insurance for plaintiff, was defendant's agent. The testimony of defendant's representative and, indeed, the testimony of Abramson himself make it very clear that Abramson was not the defendant's agent at the time this insurance was procured. This evidence is in the record, uncontradicted. From this positive and uncontradicted evidence, there is no room or basis for speculation, conjecture, supposition, implication, or question.
For the reasons originally assigned, I again, with respect, dissent.